# R. A. AND C. B. SANTEE v. HAGGART CONSTRUCTION COMPANY AND ANOTHER.[1]

March 25, 1938.

No. 31,545.

[1]Reported in 278 N. W. 520.

362

*James A. Garrity,* for appellants.
*Garfield H. Rustad,* for respondents.

HILTON, JUSTICE.

June 23, 1936, a Buick car owned by the defendant Haggart Construction Company and driven by the defendant Gilbert W. Haggart collided with a Chevrolet coupé being driven by the plaintiff R. A. Santee in a southerly direction on a highway between Park Rapids, Minnesota, and Detroit Lakes, Minnesota. The plaintiff C. B. Santee, a brother of R. A. Santee, was an invited guest and passenger in the Chevrolet car at the time of the accident. The defendant company is a North Dakota corporation, and the defendant Haggart is a resident of Fargo, North Dakota. Both plaintiffs resided in Cedar Falls, Iowa.

R. A. Santee sued to recover for personal injuries and damage to his automobile, and C. B. Santee sought recovery for personal injuries only. The former had a verdict for $2,900, of which some $400 was for damage to his car, and the latter had a verdict for $7,500, which was reduced by the trial court to $5,500. This appeal is taken from an order of the trial court denying the motions of the defendant company for judgment notwithstanding the verdict or a new trial in each case, and of both defendants for an order vacating and setting aside the verdicts and granting a new trial in each case.

The issues of Haggart's negligence and R. A. Santee's contributory negligence were clearly fact questions, and defendants do not seriously argue otherwise. No useful purpose would be served by a detailed recital or discussion of the evidence relating thereto.

The jury returned a five-sixths verdict in each case, which was signed by "Ralph C. Peterson, Foreman," and following his name appeared the names of nine jurors as "jurors concurring." Defendants contend that the verdicts were defective in form and therefore contrary to law. The statute (2 Mason Minn. St. 1927, § 9302) requires such verdicts to be signed by the ten concurring jurors. There is no claim here that the foreman was not a concurring juror or that less than ten jurors concurred in the verdict. It is evident that the foreman was a concurring juror. Although he should have signed with the "jurors concurring," the defect was one of a minor nature and did not render the verdicts a nullity. No objection was made to their form when they were returned, and they will not be set aside now on such a technical objection as is here made.

Counsel for plaintiffs was permitted to ask the jurors collectively if any of them were interested as stockholders, directors, or policyholders of the Maryland Casualty Company of Maryland, apparently defendants' insurer. This is assigned as error, counsel insisting that the company in question should not have been referred to by name, but that the interrogation should have been first limited to a general inquiry as to interest in any corporation, followed by a questioning of jurors answering in the affirmative as to the kind of corporation in which they had an interest. We recently suggested this as a proper method of procedure for the purpose of determining the fitness of jurors and insuring an impartial jury where a corporate enterprise is involved. See Prescott v. Swanson, 197 Minn. 325, 338, 267 N. W. 251, 258. While trial judges might well require counsel to follow this method of procedure, it was our purpose only to make a suggestion, and not lay down an ironclad rule. We certainly had no intention of implying that prejudicial or reversible error would necessarily result if the inquiry were permitted to follow some other course. The same procedure here complained of was followed and held not to constitute error in Scholte v. Brabec, 177 Minn. 13, 224 N. W. 259. There is no evidence of bad faith in following the course of inquiry adopted by counsel. If the matter of insurance was unduly stressed before the jury it is

attributable to the objections and arguments made by defense counsel at the time.

In his argument to the jury plaintiffs' counsel remarked that he did not sue for enough in the R. A. Santee case, but if he had sued for over $3,000 the case could have been removed to federal court by the defendants because of the diversity of citizenship of the parties, and he sued for less than that amount because, to use his language, "I made up my mind that they were going to stay in this court on one of these cases because the Haggart Construction Company would have no difficulty at all to remove the case to the federal court where you can take it away from this type of jurors and bring it down there in foreign territory." Objection was immediately made, and the court interrupted the argument to instruct the jury: "That is a matter that the jury will not consider directly or indirectly for any purpose, and you will disregard it entirely." This line of argument was of course inexcusable and improper and might well have merited a reprimand from the court, in addition to its admonition to the jury. However, the matter was not of such a serious nature that it could not be cured, and the instruction of the court was effectively designed to forestall any prejudicial effect which might have otherwise resulted. Counsel abandoned his improper line of argument immediately upon objection. The granting of a new trial upon this ground rests largely in the trial court's discretion, and we are not prepared to say that such discretion has been abused in this instance.

It is claimed that the defendant company was entitled to have judgment ordered in its favor because of the absence of proof that the Buick, which it owned, was being driven by the defendant Haggart within the course of his employment or for any of the purposes of the company. At the time of the accident Haggart and two companions were on a fishing trip. However, Haggart testified, and the fact is undisputed, that he was driving the car with the permission of the defendant company, and by virtue of 3 Mason Minn. St. 1936 Supp. § 2720-104, this was sufficient to impose responsibility for Haggart's negligence upon the company. Cases

cited by counsel were all decided prior to the passage of the statute and are no longer the law in this state.

Defendants contend that the verdicts are excessive. Both plaintiffs were about 70 years of age at the time of the accident. Dr. Rutledge, a physician who examined and attended them both at the Community Hospital in Detroit Lakes following the accident, was the only medical witness. He testified that he found R. A. Santee to be in a very nervous condition and suffering from some shock. He had a slight concussion of the brain and many cuts, bruises, and contusions on various parts of his face and body, resulting in considerable pain. He spent four or five days in the hospital and was then sent to his home, where he was confined an additional seven weeks. Following the accident he developed a tremor which was so severe at the time of trial that he was unable to write, and this condition seemed to be getting worse. He was in sound health prior to the accident, and the jury might well have found that the tremor was a direct result of his injuries. At the time of the accident he was engaged in a real estate business and testified that he earned an average of $200 a month. He was deprived of all this income for at least three months, and his business activities were still hampered at the time of trial. As already indicated, the general verdict in his favor was about $2,500.

The injuries to C. B. Santee were more severe. He also suffered shock, had a bad cut on the lower lip, another near his eye, and one on the right kneecap. He had severe bruises on the head, the entire left chest, the region of the lower back, and on both knees. He also received two fractured ribs, and four teeth were knocked loose. He was in bed in the hospital under the care of Dr. Rutledge for 20 days, and confined to his home under the care of two physicians for an additional five weeks. His voice was materially weakened, and Dr. Rutledge testified that in his opinion his injuries would continue to have a bad effect on his general health in the future. He was unable to work for five months following the accident. The matter of his earning power and loss of income, which he claimed were very substantial, was fully inquired into by

counsel on both sides, and the plaintiffs were vigorously cross-examined concerning their injuries and pain and suffering.

Injuries from which a young person would completely recover may have a permanent effect upon the health of an older person. The sound health which the plaintiffs enjoyed prior to the accident has been materially impaired, and their enjoyment of everything in store for them for the balance of their lives will be hampered by the effect of their injuries. We are of the opinion that neither verdict is excessive. The one for $2,500 seems very conservative, and the other, as reduced by the trial court, is well within the limits of reason.

The remaining assignments of error, relating to the admission of certain evidence bearing on damages, have been carefully examined and are entirely without merit. Further discussion is unnecessary.

Affirmed.

