KALINOWSKI v. ODLEWANY.

1. JUDGMENT—RES JUDICATA—DIFFERENT PLAINTIFFS—PRECEDENTS.
Decision of case in which another person was a plaintiff cannot be considered as *res judicata* of plaintiff's rights herein notwithstanding the two causes of action arose out of same accident although such former decision would be a controlling precedent as to the law on similar facts.

2. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.
On appeal from directed verdict and judgment for defendant, Supreme Court must take the testimony in its most favorable light to plaintiff.

3. AUTOMOBILES—CONSENT OF OWNER—DEVIATION FROM ROUTE.

In action against truck owner for injuries sustained by plaintiff as result of truck operator's negligence, evidence *held*, to disclose that operator's presence on street where accident occurred was for sole purpose of visiting his own friend and beyond any express or implied consent or knowledge of owner who had loaned the truck to deliver some wood and operator was entrusted to return truck to its owner, hence, as a matter of law, owner was under no liability to plaintiff (1 Comp. Laws 1929, § 4648).

4. SAME—DEVIATION FROM ROUTE—OWNER'S CONSENT.

In determining whether or not owner of automobile is liable for negligence of driver where question of latter's deviation is presented, decisive factor is not degree of deviation but whether owner has impliedly consented to route taken.

5. SAME—KNOWLEDGE OF OWNER THAT OPERATOR WAS RECKLESS DRIVER—DEVIATION FROM ROUTE.

In action for personal injuries resulting from negligent operation of a truck, that owner may have known driver was incompetent, reckless and careless would be immaterial in imposing liability on owner where operator was on a deviation from his route because of reasons personal to himself when accident happened (1 Comp. Laws 1929, § 4648).

6. SAME—LICENSES—EVIDENCE—COMPETENCY.

Evidence as to whether or not borrower of truck was a licensed driver *held*, properly excluded in action against owner where borrower was not driving truck nor present when accident occurred while operator was on deviation from route.

7. SAME—HEARSAY.

In action for personal injuries resulting from negligent operation of truck, exclusion of certain hearsay testimony *held*, not improper.

8. TRIAL—CROSS-EXAMINATION—PREJUDICE.

Latitude extended by court in permitting counsel to ask leading and suggestive questions of truck operator *held*, not to have been prejudicial to either party in suit arising out of negligent operation of truck.

POTTER and MCALLISTER, JJ., dissenting.

Appeal from Wayne; Miller (Guy A.), J. Submitted April 4, 1939. (Docket No. 7, Calendar No. 40,167.) Decided September 5, 1939. Rehearing denied November 9, 1939.

Case by Alexander Kalinowski against Stanley Odlewany for personal injuries sustained when latter's automobile, driven by another, ran into plaintiff while he stood on the sidewalk. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Dohany & Dohany* (*George A. Porter,* of counsel), for plaintiff.

*Harold S. Knight,* for defendant.

BUSHNELL, J. This is a claim arising out of an automobile accident. The claim of a different plaintiff, who was injured in the same accident, was before the court in *Kieszkowski* v. *Odlewany,* 280 Mich. 388. We do not repeat the facts recited in that case. In the *Kieszkowski Case* the trial was conducted by the circuit judge without the aid of the jury, and the parties on appeal submitted an agreed statement of facts. In the case now before us there was a jury trial.

At the close of the proofs, the applicability of the *Kieszkowski Case* was argued before the court in the absence of the jury. The court granted defendant's motion for directed verdict and informed the jury that the former decision left no room for question as to the facts or the law applicable to those facts. Plaintiff appeals from a judgment entered upon the directed verdict.

The factual background of the two cases is the same, but the *Kieszkowski Case* cannot be considered *res judicata* of this plaintiff's rights because he was not a party thereto. It is, however, a controlling precedent as to the law inasmuch as the facts in the former case are similar to those in the instant case. We must take the testimony in its most favorable light to plaintiff and determine whether any evi-

dence has been introduced which should be considered by a jury in the light of our decision in the earlier case.

There is testimony in the record now before us that after Bruno Jazinski, who was then driving the truck, turned off Conant street onto Norwalk street for the purpose of visiting a friend, he could have continued westerly on Norwalk to Gallagher and south on Gallagher to Holbrook, to defendant Odlewany's store. Jazinski testified, on cross-examination, that, when he got to Gallagher, he found automobiles "parked on the sides and trucks crossing over there," and that he "turned around and started back east on Norwalk, toward Conant." All this was after he had stopped at his friend's house. Some of this testimony was in the earlier case. Although Jazinski has added another reason for his return on Norwalk to Conant, there still remains in the case the deviation from the route for the personal purpose of visiting a friend on Norwalk. The most that can be said for the new testimony is that the trucks and traffic on Gallagher delayed the time when Jazinski could have been said to have abandoned his personal use of the truck. Whether or not it can be said that he could have abandoned his personal use by going down Gallagher is of little importance as he did not take advantage of this possibility. It cannot be established from any of the new testimony, taken in its most favorable light to plaintiff, that Jazinski was on Norwalk for any other purpose than that of visiting his friend. Such use of the truck, being beyond the "express or implied consent or knowledge" of Odlewany, does not impose liability upon him. 1 Comp. Laws 1929, § 4648 (Stat. Ann. § 9.1446). This factual difference would not justify the affirmance of a judgment entered upon a jury's verdict contrary to the result stated in the *Kieszkowski*

*Case.* See quotation in the former decision from *Irwin* v. *Williamson Candy Co.*, 268 Mich. 100.

Appellant's brief quotes other portions of the testimony in support of his argument that he was entitled to go to a jury but these fall within the facts of the *Kieszkowski* decision. As to other quoted testimony, we repeat what was said in the former case:

"The deciding factor is not the degree of the deviation, but rather, whether the owner impliedly consented to the route taken. With this distinction in mind, it can be seen, that in a legal sense, there can be no such thing as slight deviation. Either there is, or there is not, a deviation."

No new facts were presented which would make the law of the *Kieszkowski Case* inapplicable.

It is argued that plaintiff's claim under the second count of his declaration is controlled by *Tanis* v. *Eding*, 280 Mich. 440; that since neither Jazinski nor Wandor had a driver's license and Odlewany had knowledge that Jazinski was incompetent, reckless and careless, there is liability on the part of Odlewany. The defendant in the *Tanis Case* was not the owner of the car involved in that accident. Its rule is inapplicable here because such knowledge on the part of an owner is within the purview of the language of the statute. See 1 Comp. Laws 1929, § 4648 (Stat. Ann. § 9.1446).

Plaintiff also seeks a new trial because of the claimed improper admission and exclusion of certain testimony. Upon cross-examination of defendant, the court properly did not permit inquiry into the fact as to whether or not Wandor was a licensed driver. Wandor was not driving the truck or even present at the time of the accident. Nor was it improper for the court to bar certain hearsay testimony. Upon cross-examination of Jazinski, plaintiff's counsel questioned him concerning his former

testimony. Plaintiff insists the court went too far and permitted defendant, on re-direct examination, to ask leading and suggestive questions. The court gave counsel on both sides wide latitude in their examination of this witness as to his former statements. Without determining whether or not this was error, the action of the court in this particular could not be held prejudicial to either party.

The judgment entered upon the directed verdict is affirmed, with costs to appellee.

BUTZEL, C. J., and WIEST, SHARPE, CHANDLER, and NORTH, JJ., concurred with BUSHNELL, J.

McALLISTER, J. (*dissenting*). I do not agree that the case of *Kieszkowski* v. *Odlewany,* 280 Mich. 388, is a controlling precedent as to the legal questions herein involved. In that case it was argued that it could not be held *as a matter of law* that a slight deviation from route was of sufficient deviation by a servant to relieve the employer from damages. The trial court had found as a matter of fact that there was a slight deviation which was not sufficient to release the employer and entered judgment for plaintiff. On appeal such judgment was reversed and it was held that *in a legal sense* there could be no such thing as slight deviation; "either there is, or there is not, a deviation." In the instant case, appellant urges as his chief basis for appeal that the question as to whether there was deviation from route, under the circumstances, was a question of fact for the jury; and that whether the servant was acting within the scope of his employment was likewise a question of fact. It is further contended that upon this question, the credibility of the testimony of the servant was for the jury and that the trial court erred in directing a verdict for defendant.

Defendant owned a beer station and a delivery truck in the city of Detroit. Wandor, a friend of defendant, asked for the use of the truck to deliver some wood on a place on Halleck street. Defendant gave him the use of the truck and authorized Bruno Jazinski, a boy 17 years old, to accompany Wandor. After delivery of the wood, Wandor told Jazinski to take the truck back to the store. The truck was headed east on Halleck street. To return, Jazinski could turn the truck around in the street, drive west to the corner of Halleck and Joseph Campau streets, make a left turn, proceed south on Joseph Campau until he arrived at Holbrook and then east on Holbrook to the store. Or, instead, he could drive the car away in the easterly direction in which it was headed, turn right at Conant, and continue south on Conant to Holbrook, and thence west to defendant's store. He chose the latter route. By doing so he avoided the necessity of turning the car around in the street, as well as avoiding the heavy traffic on Joseph Campau and a left turn in such traffic. The route Jazinski chose was longer than the more direct route but avoided difficulties in operation and traffic. From everything that appears, the route chosen was considerably less hazardous than the only alternative route. Jazinski proceeded east on Halleck and turned south on Conant; but before he reached Holbrook, he turned right at Norwalk and proceeded west on that street. This change from the route which he had first planned upon would be no longer, as it was merely a question of going farther south and then turning west or turning west first at Norwalk and afterward going south. Jazinski stated that one of the reasons he adopted this route was that he planned to stop and see a friend living on Norwalk. He stopped at his friend's house but no one was there. He then determined to turn the truck

around and go back on Norwalk to Conant, then to Holbrook and west on Holbrook to the store. The reason he gave for this decision was that he was afraid to proceed as he planned on Norwalk west to Gallagher and thence south on Gallagher to Holbrook, on account of parked cars and fast moving trucks on Gallagher. However, after turning around he lost control of the truck on Norwalk and ran over the curb injuring plaintiff. The trial court directed a verdict of no cause of action on the ground that defendant was not liable, for the reason that Jazinski had deviated from his route, and was not acting within the scope of his employment at the time of the accident.

In this case no route was specified for Jazinski. On the question of deviation, it was for the jury to say whether the route selected by Jazinski was feasible.

"Where no route is specified, and the driver, in the exercise of his judgment, selects a feasible one, even though it be not the shortest, there would be no deviation, because the owner impliedly consented to whatever feasible route the driver selected." *Kieszkowski* v. *Odlewany, supra,* 393.

Under the evidence, there is ample support for the finding that the route selected by Jazinski was the safest and most feasible to take. Even where a driver takes a route approximately twice as long as the most direct way, if it is for the purpose of avoiding traffic, it cannot be conclusively held that he did not take the more feasible route. *Mathewson* v. *Edison Electric Illuminating Co. of Boston,* 232 Mass. 576 (122 N. E. 743).

Whether an act of a servant is within the scope of his employment is generally a question for the jury. In *Nord* v. *West Michigan Flooring Co.,* 238 Mich.

669, 673, Mr. Justice McDONALD in discussing the subject, and speaking for the court, said:

"There is another class of cases to which we think the instant case belongs. They are cases concerning the liability of the master where there is not a total severance of the relation of master and servant, but some deviation by the servant from the strict course of his employment. Of these perhaps the leading case is *Ritchie* v. *Waller,* 63 Conn. 155 (28 Atl. 29, 27 L. R. A. 161, 38 Am. St. Rep. 361). In that case one Blackwell was employed by a farmer to draw manure with a team and wagon from a brewery to his master's farm. When he was first employed, his route was pointed out to him. On one of his return trips from the brewery he deviated from his route and drove to a shoemaker's shop on his own business. He left the horses unhitched while he was engaged in the shop. They ran away and caused the injury for which damages were sought against the employer. The court there said:

" 'In making the detour Blackwell was still in charge of his master's team, though on a roundabout way home, carting manure to his master's farm. That was his main purpose and object throughout the entire transaction. In the language of the case last cited (*Quinn* v. *Power,* 87 N. Y. 535 [41 Am. Rep. 392]), even if the motive was some purpose of his own, he was still about his usual employment, although pursuing it in a way and manner to subserve such purpose also.'

"Another applicable case is *Loomis* v. *Hollister,* 75 Conn. 718 (55 Atl. 561). There the servant was employed to drive a team in the delivery of ice. His employer showed him the specific route to take and directed him to use it on subsequent trips. One day, after making his last delivery, he started on his return to the stables over the prescribed route, but instead of continuing on it he made a detour over a longer route for the purpose of going by the post office to get his paper. When he reached the post office he left the horses unhitched. They ran away and caused the injury complained of. In a well-considered opinion, the court held that whether the

servant was acting in the scope of his employment
was a question for the jury. Other cases showing
the current authority on this question will be found
in the annotation to *Fisher* v. *Fletcher,* 22 A. L. R.
1392 (191 Ind. 529, 133 N. E. 834). Applying the
principle of these cases to the one under considera-
tion, it may be said that when Mr. Nicholson made a
detour to accommodate the young ladies, he was still
in charge of his master's truck, returning to the
plant for another load of fuel. He was still about his
usual employment, although pursuing it in a way to
subserve his own pleasure. He was not on a sepa-
rate journey exclusively for his own business or
pleasure, but was, in part at least, about the master's
business; and his little joy ride with the young ladies
was only an incident to that. The fact that he dis-
obeyed his instructions is immaterial, if he was still
in the master's service. *Loux* v. *Harris,* 226 Mich.
315. It is usually a question for the jury whether an
act of the servant is within the scope of his employ-
ment."

A more compelling reason for holding that the
question of whether Jazinski was acting within the
scope of his employment was a question of fact is
that it was for the jury to pass upon Jazinski's
credibility as a witness. He was a friend of defend-
ant. He spent most of his time at defendant's place
of business and was employed on numerous occa-
sions by defendant, earning pocket money for small
tasks and errands. He was defendant's witness on
the trial. The jury was under no obligation to be-
lieve his story that he intended to stop at the home
of a friend or that he did in fact stop there; or that
the reason he turned into Norwalk was for the pur-
pose of seeing his friend. If the jury did not believe
Jazinski with regard to these matters, plaintiff would
be entitled to recover; and the jury could, in passing
upon his credibility, take into consideration his
friendship for defendant, his interest and his mo-

tives in trying to protect the defendant from damage suits arising from the accident. When Jazinski was being examined by the court in a criminal proceeding growing out of the accident, the trial court shrewdly realized the possibility of an attempt by Jazinski to protect defendant when the following took place:

"*Q.* (*The Court*) Of course, in all probability, if you were driving the truck with his permission, he would be liable to these people that you hurt for damages—how about that?

"*A.* No, sir.

"*Q.* Suppose that some of them bring suit against him, and they bring you into court and put you on the stand, what would you say if that happened; what would you say as to whether or not you were driving that truck with his permission or not?

"*A.* Without his permission?"

Whether Jazinski was acting within the scope of his employment was the crux of the case. His statement, standing alone, that he turned into Norwalk street for the purpose of seeing a friend, is not conclusive. It was for the jury to pass upon the truth of such testimony. The trial court was in error in holding that the determination of this question was one of law.

The judgment should be reversed and a new trial granted, with costs to plaintiff.

Potter, J. (*dissenting*). The facts involved sufficiently appear from the opinion of Mr. Justice Bushnell and Mr. Justice McAllister herein, and from *Kieszkowski* v. *Odlewany,* 280 Mich. 388.

I concur in the result reached by Mr. Justice McAllister.

1. The statute so far as applicable provides:

"The owner of a motor vehicle shall be liable for any injury occasioned by the negligent operation of

such motor vehicle whether such negligence consists of a violation of the provisions of the statutes of the State or in the failure to observe such ordinary care in such operation as the rules of the common law require. The owner shall not be liable, however, *unless said motor* vehicle is being driven with his or her express or implied consent or knowledge.'' 1 Comp. Laws 1929, § 4648 (Stat. Ann. § 9.1446).

This court has never declared this statute unconstitutional. It says the owner shall not be liable unless the motor vehicle is being driven with his or her express or implied consent or knowledge. The statute imposes liability if the owner lets the employee take the motor vehicle and such liability attaches whether the employee did what he was told to do with the motor vehicle or not. The decisions of this court in interpreting this statute (which in no way recognizes the common-law doctrine of master and servant) have written into the statute an excuse of the owner from liability in case his employee deviates from the usually traveled route for his own business or pleasure, holding such employee is thus outside the scope of his employment and the owner of the vehicle is not liable for the failure to observe ordinary care in the operation thereof under such circumstances. It would be just as logical to further emasculate the plain provisions of the statute and hold the owner and employer is liable only when the motor vehicle in the hands of his employee is operated as directed by the employer, and if the employee is directed not to operate the motor vehicle negligently and injury results from negligent operation, the owner and employer be not liable therefor because the employee was violating the directions of his employer, acting outside the scope of his authority, and, though he failed to observe ordinary care in the operation of such motor vehicle, the employer is not liable.

We are dealing with the language of a statute. Prior to the enactment of any statute in this State governing liability for the negligent operation of motor vehicles on the public highways, the common law prevailed. An owner of a motor vehicle was not liable for the negligence of a person to whom he had loaned it, whether that person was a member of his family, his servant on a personal errand, or a stranger. Liability would attach to the owner only where the vehicle was in operation on the owner's business. In other words, the driver had to be the servant or agent of the owner and at the time of the accident acting within the scope of his employment. The increase in the number of accidents resulting from the operation of motor vehicles, many of which caused serious personal injuries and frequently resulted in death, challenged the attention of the legislature to the fact that generally the driver of the commercial motor vehicle whose negligence caused the accident was financially irresponsible and the financially responsible owner escaped liability on some technical claim such as that the car was loaned for a specific purpose while at the time of the accident it was being used for another purpose. 19 Boston University Law Review, p. 448. As a result, the legislature took action.

The true interpretation of this statute is that

"If the owner's consent, either express or implied, is proved, it is no longer a defense in case of accident that the servant or agent to whom the use or operation of the vehicle has been intrusted has temporarily departed from the course of his employment or the scope of his agency," (*Massart v. Narragansett Electric Co.,* 54 R. I. 154 [171 Atl. 238])

for the reason:

"The statute abrogates the defense of deviation from route or scope of employment when the servant

is operating the automobile with his master's con-
sent." *Massart* v. *Narragansett Electric Co., supra.*

Consent of the owner is the vital matter. Consent
to operate a motor vehicle is not coextensive or
synonymous with scope of employment. There may
be such consent when there is no employment. There
may be employment without consent. To hold that
scope of consent in cases of employer and employee
is identical with scope of employment is to adopt a
test not sanctioned by statute. An employee's au-
thority to use the employer's car is measured by the
consent given by the employer. The consent may
embrace acts outside the scope of the employment,
and may be so restricted as not to include acts ordi-
narily within the scope of employment. If the scope
of employment measures the scope of consent, it is
because the parties have adopted it as the measure
of consent, not because the scope of employment is
in itself a measure of the extent of consent. There
may be owner's responsibility based solely on con-
sent in the absence of the relation of employer and
employee. The statute recognizes the use of auto-
mobiles by others than the owner where no relation
exists between the owner and the driver which would
at common law, or, in the absence of statute, create
liability on the part of the owner for the negligence
of the driver. The scope of employment is not the
measure of defendant's consent. *Flaugh* v. *Egan
Chevrolet, Inc.,* 202 Minn. 615 (279 N. W. 582).
Whatever the scope of the employment, there is lia-
bility upon the part of the master if at the deter-
minative time the use of the car by the employee is
within the scope of the consent given for such use.
*Anderson* v. *Standard Oil Co.,* 204 Minn. 337 (283
N. W. 571); *Patterson-Stocking, Inc.,* v. *Dunn Bros.
Storage Warehouses, Inc.,* 201 Minn. 308 (276 N. W.

737); *Santee* v. *Haggart Construction Co.*, 202 Minn. 361 (278 N. W. 520).

"If an automobile owner expressly grants another permission to use his car, he can be held liable for the latter's negligence. When one lends or hires his car to another, the latter drives with his express or implied consent within the meaning of such statutes." 5 Am. Jur. pp. 736, 737.

2. In those States where the statute has been interpreted to excuse liability in case there is a deviation from the route, the general rule is that the servant must have turned completely aside from or abandoned the affairs of the owner of the motor vehicle and be using such vehicle entirely for his own business or pleasure. It is not every deviation from the line of his duties by the driver which will excuse the owner from liability.

"The deviation must be so substantial as to amount to an entire departure; a slight deviation from the owner's business is not sufficient to relieve the owner from liability. A mere incidental departure during which the driver's purposes are mingled with the owner's will not discharge the owner from liability.

"The fact that the driver of a motor vehicle when upon business for the owner deviates slightly from the usual or most direct route of travel does not as a general rule affect the liability of his master for an injury resulting from his negligent operation of the vehicle, and this rule applies, even though the driver at the time performs some act for himself or is serving some purpose of his own." 42 C. J. pp. 1110, 1111, citing Federal cases, and cases from the States of Alabama, Arkansas, California, Connecticut, Kentucky, Minnesota, Missouri, New Jersey, New York, Ohio, Pennsylvania and Wisconsin, and from England and Ontario.

Many Michigan cases go beyond the terms of the statute, which should be construed in accordance with the usual and ordinary use of the English language.

3.  The statute imposes liability if the motor vehicle is "being driven with his or her express or implied consent *or* knowledge." According to the ordinary meaning of the English language, the word "*or*" indicates a disjunctive or alternative. The statute imposes liability, according to its terms, if the motor vehicle is being driven either with the owner's express or implied consent, or with the owner's express or implied knowledge, when there is a failure to observe such ordinary care as the rules of the common law require. Knowledge is something different from consent. One may know his motor vehicle has been taken without his consent.

The criminal law provides for the punishment of those who without authority take possession of and drive away any motor vehicle, Act No. 328, § 413, Pub. Acts 1931 (Comp. Laws Supp. 1935, § 17115–413, Stat. Ann. § 28.645); and section 414 of the same act (Comp. Laws Supp. 1935, § 17115–414, Stat. Ann. § 28.646) provides:

"The provisions of this section shall be construed to apply to any person or persons employed by the owner of said motor vehicle or any one else, who, by the nature of his employment, shall have charge of or the authority to drive said motor vehicle if said motor vehicle is driven or used without the owner's knowledge *or* consent."

This statute draws a clear distinction between one *authorized* by the owner to drive a motor vehicle and the owner's *knowledge* or *consent* that it be driven.

When 1 Comp. Laws 1929, § 4648 (Stat. Ann. § 9.1446) is construed with Act No. 328, § 414, Pub.

Acts 1931 (Comp. Laws Supp. 1935 § 17115–414, Stat. Ann. § 28.646), it is apparent that neither statute was intended to mean what it says.

One may take a motor vehicle and unlawfully drive it away. He may steal it and still, if the owner has express or implied knowledge of such unlawful taking and use, if he acts promptly and pursues the thief in an attempt to recover the stolen vehicle, and the fleeing thief injures someone by his failure to use ordinary care as required by the indefinite rules of the common law, in its operation, the owner, according to the statute, having express knowledge, may be liable. This is absurd. It would have been a better use of the usurped power of judicial legislation to have rewritten these statutes so the disjunctive "or" between the words "knowledge" and "consent" was changed to the conjunctive "and," than to have taken the absurd position the word "consent" means "following a fixed route."

4. Mr. Justice Bushnell's conclusion that if there is a failure to observe the common-law rule of reasonable care during the slightest deviation from the usually traveled route there is a want of consent on the part of the owner may be a logical deduction from the premises assumed. But the assumed premises are faulty. *First,* consent and employment are not identical. Scope of consent and scope of employment are not the same. To reach the conclusion arrived at, it is necessary, *second,* to write into the statute the provisions of the common law regulating the liability of the master for the acts of his servant, which the statute was passed to abrogate; and, *third,* to set aside the express language of the statute and to hold, *fourth,* that because the employee violated this assumed common-law rule expressly abrogated by statute, the employer and owner of the motor vehicle is not liable. The general rule sustained by

the great weight of authority at common law is that slight variations from the usually traveled route will not excuse the liability of the master. If we are to ignore the language and purpose of the statute and measure statutory liability by the common-law rule, why not follow the common law?

I, therefore, concur in the result reached by Mr. Justice MCALLISTER.

MCALLISTER, J., concurred with POTTER, J.