## WEST MICHIGAN DOCK & MARKET CORPORATION et al. v. ST. PAUL–MERCURY INDEMNITY CO.

Civil Action No. 1151.

United States District Court
W. D. Michigan, S. D.

Jan. 20, 1949.

Alexander, Cholette, Buchanan, Perkins & Conklin and Paul E. Cholette, all of Grand Rapids, Mich., for plaintiffs.

Mitts & Smith and Clifford A. Mitts, all of Grand Rapids, Mich., for defendant.

STARR, District Judge.

Plaintiff West Michigan Dock & Market Corporation, herein referred to as the "dock company," is a Michigan corporation owning and operating dockage, warehouse, and terminal facilities at the port of Muskegon, Michigan. The Wisconsin & Michigan Steamship Company, a corporation, herein referred to as the "steamship company," is a duly licensed common carrier of freight and passengers and owns and operates a boat known as the Milwaukee Clipper, which transports passengers, freight, and automobiles across Lake Michigan between the cities of Muskegon, and Milwaukee, Wisconsin. Under a written contract between them, the dock company, for the consideration therein provided, furnishes the steamship company at the port of Muskegon with dockage and terminal facilities, warehouse space, a ticket office, passenger waiting room, and personnel for the ticket office and for the handling, loading, and unloading of automobiles and freight. Plaintiff Liberty Mutual Insurance Company, a Massachusetts corporation, herein referred to as "plaintiff insurance company," is the insurer of the dock company under a policy protecting it against liability to the extent of $25,000 for injuries to one person resulting from the negligent acts of its employees in the performance of their duties. Defendant Saint Paul-Mercury Indemnity Company, a Delaware corporation, herein referred to as "defendant insurance company," had issued its "combination automobile policy" to one John Stuit, thereby insuring him against liability to the extent of $10,000 for bodily injuries to one person.

On July 11, 1947, Stuit and his wife, desiring to go from Muskegon to Milwaukee on the Milwaukee Clipper and to take their Studebaker automobile with them, drove to the dock company's property in Muskegon. This property comprises about 54 acres located on the lake front, of which about 30 acres are enclosed by a fence. As was the customary practice in handling passengers and their cars, a dock-company employee directed Stuit to park his car outside the enclosed area while he purchased a passage ticket for himself, his wife, and his car. He purchased the required ticket upon which was written the license number of his car, and was given a gate pass, which was to be presented to the dock company's attendant at the gate through which he would drive his car into the enclosed area. He returned to his car and waited for some time until the Milwaukee Clipper was ready to load. He was then allowed to drive into the enclosed area upon presenting his gate pass and was directed by an attendant of the dock company to park his car among a group of other cars which were lined up for loading on the boat. Stuit's car was new, and he asked the attendant if he could drive it on the boat but was informed that passengers were not permitted to drive their own cars aboard. He left his car in the enclosed area as directed, and he and his wife went aboard the boat. An employee of the dock company, in loading the Stuit car on the boat, drove it part way up an inclined ramp and left it there. The car backed down the ramp and struck and fatally injured one Julia Mullen. The administrator of her estate has commenced suit against the dock company in the circuit court of Muskegon county, alleging negligence on the part of the dock company, its employees and attendants, and claiming damages in the amount of $35,000. As hereinbefore mentioned, the dock company is protected against liability in this State-court proceeding, which is still pending, to the extent of $25,000 under its policy with the plaintiff insurance company, and that company has undertaken the defense of the suit.

The dock company and plaintiff insurance company have instituted the present suit in this court against the defendant insurance company under the Federal Declaratory Judgments Act, 28 U.S.C.A. § 400, now 28 U.S.C.A. § 2201. Their suit is based on the theory that the dock company, in addition to its protection as an "insured" under its policy with the plaintiff insurance company, is also protected as an "insured" under the omnibus clause of the automobile policy issued to Stuit by the defendant insurance company. Specifically,

plaintiffs seek an adjudication that the Stuit automobile policy, and in particular the omnibus clause thereof, protects the dock company in respect to the Mullen accident, and that the defendant insurance company is obligated under the terms of that policy to defend the Mullen-estate suit against the dock company in the State court and to pay its proportionate share of any settlement made, or judgment rendered, in that suit. In its answer defendant insurance company admits the existence of an actual controversy but denies that the omnibus clause of its policy protects the dock company, and denies that it is obligated under the terms of that policy to defend the suit by the administrator of the Mullen estate or to pay any part of a settlement made, or judgment rendered, in that suit.

In its brief defendant insurance company in effect concedes that if the plaintiff dock company is an "insured" within the meaning of the omnibus clause of the Stuit policy, then the defendant insurance company is obligated under condition 20 of that policy to pay its proportionate share, that is 10/35, of any amount required to settle the State-court suit or to satisfy any judgment rendered against the dock company, but not exceeding $10,000. Condition 20 of the Stuit policy provides:

"Other Insurance. If the Insured has other insurance against a loss covered by this Policy the Company shall not be liable under this Policy for a greater proportion of such loss than the applicable limit of liability stated in the Declarations bears to the total applicable limit of liability of all valid and collectible. insurance against such loss; provided, however, the insurance under Insuring Agreements V and VI shall be excess insurance over any other valid and collectible insurance available to the Insured, either as an Insured under a Policy applicable with respect to the automobile or otherwise, against a loss covered under either or both of said Insuring agreements.

"Coverage C—Under subdivision (2) of Coverage C the insurance afforded with respect to other automobiles shall be excess insurance over any other valid and collectible Medical Payments Insurance applicable thereto."

Therefore, the principal question in this case is whether or not the plaintiff dock company is an "insured" within the meaning of that term as used in the omnibus clause of the Stuit policy. That clause, section III of the policy, provides:

"Definition of 'Insured.' The unqualified word 'insured' wherever used in Coverages A and B and in other parts of this Policy, when applicable to such coverages, includes the Named Insured and, except where specifically stated to the contrary, also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the Named Insured. The insurance with respect to any person or organization other than the Named Insured does not apply: * * * (c) to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station or public parking place, with respect to any accident arising out of the operation thereof."

■■ It is a well-recognized rule of instruction that in case of ambiguity or doubt in the language used in an insurance policy, it shall be construed in favor of the insured, and that exceptions to the liability provided for in the policy are to be strictly construed against the insurer. Aschenbrenner v. United States Fidelity & Guaranty Co., 292 U.S. 80, 54 S.Ct. 590, 78 L.Ed. 1137; Sutton v. Hawkeye Casualty Co., 6 Cir., 138 F.2d 781; Burns v. Mutual Ben. Life Ins. Co., D.C., 79 F.Supp. 847; Zabonick v. Ralston, 272 Mich. 247, 261 N.W. 316; Pawlicki v. Hollenbeck, 250 Mich. 38, 229 N.W. 626. Furthermore, this rule of construction may be invoked by one who qualifies as an insured under the omnibus clause of the policy as well as by the named insured, because the policy is for the benefit of both. United States Fidelity & Guaranty Co. v. Mann, 4 Cir., 73 F.2d 465; Wilson v. Marshall, 277 Mich. 583, 269 N.W. 607; Dickinson v. Maryland Casualty Co., 101 Conn. 369, 125 A. 866, 41 A.L.R. 500; Zuvich v. Ballay, La.App., 149 So. 281; Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S.W.2d 473, 72 A.L.R. 1368. The law is also established that the terms

of an insurance policy shall be construed in the plain, ordinary, and popular sense of the language used, and that a provision of a policy plainly and definitely expressed in appropriate language must be enforced in accordance with its terms. Hooker v. New York Life Ins. Co., 7 Cir., 161 F.2d 852; Kirkby v. Federal Life Ins. Co., 6 Cir., 35 F.2d 126; Burns v. Mutual Ben. Life Ins. Co., supra; Kingsley v. American Central Life Ins. Co., 259 Mich. 53, 242 N.W. 836; Ashley v. Agricultural Life Ins. Co. of America, 241 Mich. 441, 217 N.W. 27, 58 A.L.R. 1208.

The defendant insurance company contends that the dock company cannot claim the benefit of the omnibus clause of the Stuit policy because at the time of the accident it was using the ·Stuit car without his permission. It claims that he gave the steamship company, but not the dock company, permission to load his car on the boat. However, from the evidence it is clear that Stuit knew nothing of the contract or relationship between the steamship company and the dock company. He said in substance that he didn't know and didn't care whether the attendant was employed by the dock company or the steamship company. His only concern was to get his car aboard the boat. He testified in part:

"Q. To whom did you intend to turn your car over at the time you left it there at the gate? * * * A. I don't know; I didn't know there were two companies there. * * * I just wanted to turn it over to whoever would put that car on the boat and get it across the lake."

When Stuit was told that he couldn't drive his car aboard, he voluntarily left it with the dock-company attendant and in effect gave that company permission to put it aboard. From the testimony it is clear that at the time of the accident the employee of the dock company who drove the car on to the ramp was using it with the permission of Stuit, the named insured.

The cases of Cox v. Government Employees Ins. Co., 6 Cir., 126 F.2d 254; Wingett v. Moore, 308 Mich. 158, 13 N.W. 2d 244; Roberts v. Lundy, 301 Mich. 726, 4 N.W.2d 74; Fischer v. McBride, ·296 Mich. 671, 296 N.W. 834; Kalinowski v. Odle-

wany, 289 Mich. 684, 287 N.W. 344; Merritt v. Huron Motor Sales, Inc., 282 Mich. 322, 276 N.W. 464, and other cases cited and relied upon by defendant, are not in point. In those cases the accidents occurred either when one, having obtained permission of the owner to use the automobile, turned it over to another to drive it, or when the scope of the permission granted had been exceeded by the permissive user. The case of Fagg v. Massachusetts Bonding and Insurance Co., 142 Or. 358, 19 P.2d 413, also relied upon by defendant, held that a purchaser of an automobile, who had paid the full purchase price under a contract of purchase and who had obtained full and exclusive control over it, was driving the car in his own right at the time of the accident and not with the permission of the vendor. This case and the somewhat analagous case of Tanis v. Eding, 274 Mich. 288, 264 N.W. 375, are obviously not in point.

The defendant insurance company also contends that the dock company cannot claim the benefits of the omnibus clause of the Stuit policy, because it was operating a ˮ"public parking place" and is, therefore, excluded from protection by subsection (c) of that clause which, as hereinbefore noted, provides:

"The insurance with respect to any person or organization other than the Named Insured does not apply: * * * (c) to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station or *public parking place*, with respect to any accident arising out of the operation thereof."

In support of its contention that the dock company was operating a public parking place, defendant insurance company relies on Best & Co. v. Incorporated Village of Garden City, 247 App.Div. 893, 286 N.Y. S. 980, where the court held that a store which maintained a parking lot adjacent to its premises for the free parking of vehicles of its customers, was operating a public parking lot within the terms of a zoning ordinance. On the other hand, plaintiffs point out that the Best case was a three-to-two decision of a lower New York

court, and that it is contra to the holding in State ex rel. Szodomka v. Gruber, 201 La. 1068, 10 So.2d 899, where the court held that a restaurant which maintained a free parking lot for its patrons in the rear of the restaurant was not operating a public parking lot within the meaning of that term as used in a zoning ordinance. However, this court is not faced with a choice between these two authorities because neither is pertinent to the facts in the present case, where the automobiles of the passengers on the boat were lined up and held in the enclosed area of the dock company merely as a preliminary step in the process of loading the vehicles on the Milwaukee Clipper. Instead of permitting passengers to drive their own cars aboard the boat, the dock company required that its own attendants load the cars. As a practical and expedient method of handling passengers' cars, the dock company assembled them in one place in the enclosed area before they were driven on the boat. From the evidence the most that can be said is that the dock company was providing boat passengers who had purchased tickets for the transportation of themselves and their cars with facilities for the loading of their cars on the boat. The court concludes that the dock company was not operating a "public parking place" within the meaning of that term as used in subsection (c) of the omnibus clause of the Stuit policy.

The cases of Public Indemnity Co. of Newark, N. J., v. Yearwood, 50 Ga.App. 646, 179 S.E. 232; State, for Use of Tondi, v. Fidelity & Casualty Co., 156 Md. 684, 145 A. 182; Wendt v. Wallace, 185 Minn. 189, 240 N.W. 470; Ederer v. Milwaukee Automobile Ins. Co., 220 Wis. 635, 265 N. W. 694; and Paine v. Finkler Motor Car Co., 220 Wis. 9, 264 N.W. 477, cited by defendant, involved the application of exclusion clauses to owners or employees of "automobile repair shops" or "public garages." These cases are not determinative of the questions involved in the present suit.

The fact that on isolated occasions in the past, groups such as the members of a chamber of commerce or a building-and-trades exchange were permitted to leave their cars parked on the dock company's property *outside* the enclosed area while they went on lake cruises, has no material bearing on the specific question here presented as to whether or not the *enclosed area* where the Stuit car was parked, or any part thereof, was being operated by the dock company as a "public parking place."

Defendant insurance company further contends that, even if the dock company is held to be an "insured" under the omnibus clause of the Stuit policy, it cannot claim the benefits of the policy because at the time of the accident the Stuit car was not being used for "business and pleasure" under the provisions of Item 5 of the policy, which provides:

"Use: The purposes for which the automobile is to be used are BUSINESS AND PLEASURE.

"(a) The term 'pleasure and business' is defined as personal, pleasure, family and business use.

"(b) The term 'commercial' is defined as use principally in the business occupation of the Named Insured as stated in Item 1, including occasional use for personal, pleasure, family and other business purposes."

The defendant argues that this provision contemplated that the Stuit car would be used in driving upon roadways for business or pleasure and that it was not contemplated that it would be loaded upon a boat for the purpose of transportation. This provision of the policy recognizes three possible classes of use; that is, business, pleasure, and commercial. There is no claim that at the time of the accident the Stuit car was being used for commercial purposes, and the evidence does not indicate that it was being so used. The policy covered use for "business and pleasure" and defined that term to mean "personal, pleasure, family and business use." Defendant's argument would appear to be that, while the Stuit car was being loaded on the Milwaukee Clipper for transportation from Muskegon to Milwaukee, it was not being used for either business or pleasure. That argument is without merit, because from the testimony it is obvious that Stuit and his wife were making either a business or a pleasure trip to Milwaukee. The trip did not cease to be a business or pleasure trip merely

because a part of the journey necessitated a boat trip across Lake Michigan. The court finds that at the time of the accident the Stuit car was being used for "business and pleasure" within the meaning of those terms as used in the Stuit policy. In the case of Gray v. Sawatzki, 291 Mich. 491, cited by defendant it was held that an employee who used his employer's truck to drive his wife home from a party at four o'clock in the morning was acting outside the scope of his employment and without the permission of his employer, and that such use of the truck was not a "commercial" use within the terms of the insurance policy involved. That case is obviously not in point here.

For the reasons herein stated, the court concludes and adjudges: (1) That the plaintiff dock company is an "insured" within the meaning of that term as used in the omnibus clause of the Stuit automobile policy issued by the defendant insurance company and that the dock company is entitled to the protection and benefits which that policy confers upon it as an "insured"; and (2) that under the provisions of the Stuit policy the defendant insurance company is obligated to participate with the plaintiff insurance company in the defense of the Mullen-estate suit against the dock company, now pending in the circuit court for Muskegon county, and to pay its proportionate share, not exceeding $10,000, of any settlement made or judgment rendered in that suit.

A judgment will be entered in favor of the plaintiffs and against the defendant in accordance with this opinion.