J. Irwin Shapiro, J.
This action, in which plaintiff seeks a declaratory judgment, was submitted to the court for decision on an agreed statement of facts.
To adequately comprehend the questions of law which must here be decided, a recitation of the facts is deemed necessary.
On June 22, 1955, one Carl Tamorria drove himself and a party of relatives and friends to Tuf aro’s Restaurant. He drove into the parking lot located on the south side of Roosevelt Avenue, adjacent to the building containing the restaurant. This parking lot, restaurant and Tuf aro’s Bakery, which is in the same building as the restaurant, are all owned by affiliated corporations (hereinafter for convenience called the “ owners ”.)
The parking lot, which accommodates about 30 cars, is enclosed on the east and west by brick walls of adjacent buildings, on the south by a partition of shrubs and trees and on *416 the north, adjacent to the sidewalk, by a wire linked fence which has an opening for the passage of cars into and out of the lot. It is used by patrons of Tufaro’s Eestaurant and Tufaro’s Bakery. There is no charge made for the parking of cars by patrons, and 1 ‘ the owners of the restaurant and parking lot * * * do not permit any members of the public ” other than such patrons, to use said lot, which is not licensed. A sign posed on the brick wall of the building to the east of the lot reads as follows:
‘ ‘ PARKING POR TTJFAR0 ’S PATRONS NOT RESPONSIBLE FOR DAMAGE ON OARS.”
Plaintiff is a printer. In an effort to earn some extra money he, on occasions, during evening hours and weekends, stationed himself at the parking lot and offered his services to the restaurant or bakery patrons 1 ‘ driving into the lot, and parking their cars and delivering the cars to the patrons when they were leaving ’ ’. This was done with the knowledge, consent and permission of the owners. However, he “ received no compensation whatever from the owners ” and he “was not subject to supervision nor [sic] control by the restaurant owner except of course that the owner could, if it so desired, have prevented plaintiff from entering or trespassing upon the parking lot.” His “ sole remuneration consisted of any gratuity which the patrons cared to give for plaintiff’s service.”
When Carl Tamorria drove into the parking lot, ‘ ‘ plaintiff * * * indicated” to him “to stop his car at the entrance to the lot ”. He and his party thereupon alighted from the automobile, after which plaintiff “ drove the automobile a short distance to a parking place in the lot and left it there.”
Later, Tamorria emerged from the restaurant, went into the parking lot, and requested that plaintiff deliver his car to him.
Plaintiff thereupon “ entered the assured’s [Tamorria’s] car and drove it from its parking place to a point near the exit from the lot.” It was at this point that Tamorria’s “ automobile became involved in an accident ’ ’ in which one Max Kivel and others claim to have received personal injuries.
How the accident occurred is immaterial to the determination of this case.
As a result of the accident plaintiff was served with a summons and complaint in an action instituted against him by said Kivel and others. He thereupon 11 caused the summons and complaint to be forwarded to the defendant Allstate with a request that *417 they defend him in that action. Allstate has disclaimed liability and refused to defend the plaintiff herein in that action. ’ ’
On the day of the accident, a liability policy which Allstate had issued to the owner of the automobile, Carl Tamorria, was in full force and effect. Under its terms the insurer was required to pay on behalf of the insured all damages which he shall be legally obligated to pay because of bodily injury sustained by any person ‘1 arising out of the ownership, maintenance or use, including loading and unloading, of the owned automobile * • * * ” and to ‘ ‘ defend any suit, even if groundless, false or fraudulent, against the insured for such damages.”
In paragraph X of the policy — ‘ ‘ defixitioxs ’ ’ — the word ‘1 insured ’ ’ was defined as follows: ‘ ‘ The unqualified word ‘ insured ’ wherever used: (a) with respect to the liability insurance, includes the named insured, spouse, and (1) with respect to the owned automobile or a substitute automobile, any other person or organization legally responsible for its use, provided the actual use of the automobile is by the named insured or spouse or with the permission of either * * * .”
Thus, without more, and since the use of the automobile by plaintiff was “with the permission” of the named assured, plaintiff, under the very terms of that portion of the policy, also became a person covered by and “insured” under the policy. However, the issue in this case is created by subdivision 3 of the “ Exclusions ” in the policy which state that it does not apply ‘1 to any person " m * employed in or operating an automobile business, with respect to an accident arising out of its operation.” The term “ Automobile business ” is defined, under subdivision 10 of paragraph X to mean ‘ ‘ an automobile repair shop, public garage, sales agency, service station or public parking place.” It is clear that plaintiff was not “employed” in an “ automobile repair shop, public garage, sales agency [or] service station * * * ” and that, therefore, these “ Exclusions ” in the policy do not apply.
The question therefore is whether plaintiff was “ employed in or operating ” a “ public parking place ’ ’ which is also one of the categories excluded from coverage.
Allstate contends that since the parking lot in question was maintained by a public restaurant, which could not restrict its patronage to any class or group of people, the lot must be deemed a i 1 public parking place” and that, therefore, the plaintiff as an “ employee ” in a “public parking place” is specifically excluded from coverage under the terms of the policy.
*418 It is indeed true, as contended by Allstate, that in Best & Co. v. Village of Garden City (247 App. Div. 893, affd. 273 N. Y. 564), the court held that a store which maintained a parking lot adjacent to its premises, for the free parking of vehicles of its customers, was operating “ a public parking place, although privately owned and its use limited to customers of plaintiff Best & Go., Inc.” There a subsidiary corporation wholly owned by Best & Company conducted a parking lot adjacent to its building, on property owned by the former corporation, in the Village of Garden City, for the temporary storage of the cars of its customers. Temporary permits had been granted for such use but the Board of Zoning Appeals refused to give its approval for such permanent use under a village ordinance which provided that 11 no public parking place shall be conducted in any district, except when owned or controlled by the municipality or its agents, unless approved by the board of zoning appeals as hereinafter provided.” After the parking place in question was constructed and actually used, the zoning ordinance was amended so as to forbid “ outdoor storage or parking for more than three motor vehicles except as permitted by the board of zoning appeals as hereinafter provided.” The' complaint there alleged that plaintiffs were entitled to use part of their private property for parking purposes, and that the defendants had denied such right and had illegally threatened to interfere therewith. The plaintiffs asked for a judgment declaring that they were not maintaining a ‘1 public parking space ’ ’ within the meaning of the zoning ordinance, and that the amendment thereof could not operate ex post facto, and that if it did, it was unconstitutional with respect to their particular property. The Appellate Division, Second Department, held that the amendment, having been adopted after plaintiffs had expended money on the parking place, was void as to them but dismissed the complaint on the ground that the parking place was a public parking place within the meaning of the zoning ordinance, and that when plaintiffs’ application for a permanent permit was denied by the Board of Zoning Appeals, plaintiffs’ remedy was to review such denial by obtaining an order of certiorari, pursuant to section 179-b of the Village Law.
In holding that the plot in question was a public parking place, the Appellate Division said: ‘1 It is public, because it is affected by a public interest, just as much as a theatre, a dance hall and the like. (Village Law, § 89, subd. 52.) There will be an assembly of cars containing gasoline which in the aggregate will be considerable, presenting a fire hazard; there will be entrance and exit over the sidewalk, endangering pedestrians; *419 the entrance and exit must be to and from public streets, which will involve traffic regulation. The ordinance does not prevent the use of private property. It was enacted for the purpose of reasonable regulation.” (Best & Co. v. Village of Garden City, 247 App. Div. 893, supra).
The language of the court in that case must be analyzed and considered in its frame of reference; it should not be applied in a vacuum. There the court was construing a zoning ordinance enacted for the purpose of reasonably regulating private property used as a free parking place for customers of the owner of the store. It was enacted for the benefit and safety of the public at large. Here we are not dealing with a statute or other law but with the meaning and construction of a contract of insurance drawn by the insurance company, and the question to be determined is whether the plaintiff, who was requested by the owner of the insured automobile to deliver it near the exit of Tufaro’s parking lot, was, under the circumstances, employed in or operating a public “ parking place ” so as to be excluded from coverage under the terms of the policy.
Assuming, despite the rather loose relationship that existed between plaintiff and Tufaro, in respect to his activity at its parking lot whenever he chose with no compensation other than the gratuities from patrons whose cars they permitted him to handle upon their arrival and departure from the restaurant, that he may, nevertheless, be deemed to be a person ‘ ‘ employed ’ ’ in said parking place, it cannot be said that such parking place was 1 ‘ public ’ ’ within the plain and usual meaning of that term. Its use was confined to patrons of the Tufaro Restaurant and the Tufaro Bakery and not “ for the business of storing automobiles for a stipulated rental ’ ’ by anybody irrespective of such patronage. (Premium Point Park Assn. v. Polar Bar, 306 N. Y. 507, 511.)
In the case last cited the question presented was whether a restrictive covenant, prohibiting the use of real property for a commercial garage or automobile parking lot, a public garage or public automobile filling station, barred the owner of a refreshment stand from using part of his land on which to park automobiles of customers solely for their convenience. The Court of Appeals held that the covenant did not bar such use.
Similarly in West Michigan D & M Corp. v. St. Paul-Mercury Ind. Co. (82 F. Supp. 403, affd. 179 F. 2d 242) it was held that a dock company, which provided ship passengers who had purchased tickets for transportation for themselves and automobiles with facilities for loading them onto the ship, was not operating a 11 public parking place ’ ’ within the meaning of *420 an omnibus clause of an automobile policy excluding its coverage from public parking places. In that case an employee of the dock company instructed the insured to park his car outside of a closed area while he purchased passage for himself, his wife and the car. He was given a pass and when the ship was ready to be loaded some time later was allowed to drive his car into the enclosed area and was instructed by a dock company employee to leave it among a group of other cars lined up for loading. An employee of the company then drove the insured’s car partly up a ramp where he left it. The car, however, backed dowm the ramp and fatally injured a third party whose administrator brought suit against the dock company. The insurer of the passenger’s car refused to defend the dock company on a number of grounds, one of which was that the said company by the use of said enclosed area was operating a public parking place. The suit for declaratory judgment resulted in a determination, affirmed by the Circuit Court of Appeals "without opinion, that the dock company was an “ insured ” within the meaning of that term as used by the policy issued by the defendant insurance company to the owner of the car, and that such dock company was accordingly entitled to the protection and benefits which the policy conferred upon it as an “ insured.”
It thus seems clear that plaintiff, when he drove Tamorria’s car, at the latter’s request, became an insured under the Tamorria policy. He is, therefore, entitled to the same protection thereunder that Tamorria would have if he, instead of plaintiff, had been driving the automobile.
Even if it could be fairly contended that a .construction of the policy favorable to Allstate could be made in addition to the interpretation given it by the court, it would nevertheless necessarily follow that the defendant Allstate must defend the plaintiff in the personal injury action which has been commenced against him for “ if a policy of insurance is written in such language as to be doubtful or uncertain in its meaning, all ambiguity must be resolved in favor of the policy holder and against the company ’ ’ since ‘1 the burden was [is] on the defendant to establish that the words and expressions used not only are susceptible ’ ’ of the construction urged by it “ but that it is the only construction that can fairly be placed thereon.” (Emphasis supplied; Hartol Prods. Corp. v. Prudential Ins. Co., 290 N. Y. 44, 49; Sapolin v. American Employers Ins. Co., 21 Misc 2d 477; Standard Sur. & Cas. Co. of N. Y. v. Maryland Cas. Co., 281 App. Div. 446; Grand Union Co. v. General Acc. Fire & Life Assur. Corp., 254 App. Div. 274; Berkshire Life Ins. Co. v. Weinig, 290 N. Y. 6; Birnbaum v. Jamestown *421 Mut. Ins. Co., 298 N. Y. 305; Graves v. Public Serv. Mut. Ins. Co., 5 N Y 2d 120.)
Accordingly, it is held that the plaintiff is entitled to the same protection and benefits which the policy conferred upon the named insured. The plaintiff is entitled to a declaratory judgment to that effect, with costs. Proceed on notice accordingly.