## KIEFER *v.* GOSSO.

1. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.

The Supreme Court views the facts from the light most favorable to the plaintiff on appeal from directed verdict for defendant.

2. AUTOMOBILES—OPERATION BY COMPANY EMPLOYEE ON PERSONAL BUSINESS—CONSENT—EVIDENCE.

Evidence presented in action by administratrix of estate of motorist who was killed by defendant's truck, driven by its employee on the wrong side of the highway *held*, to present to jury the matter of whether or not the truck, being operated by such employee on his personal business, was so operated with the full knowledge and consent of defendant company's agents (CLS 1956, § 257.401).

3. SAME—OWNER'S CONSENT TO OPERATE—MASTER AND SERVANT.

The owner liability provision of the vehicle code is founded on the police power of the State and is designed to make owners of automobiles liable for the negligent acts of those to whom they entrust their vehicles and is not limited by the common-law tests applicable to the master-servant relationship (CLS 1956, § 257.401).

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error § 886.
[2] 5A Am Jur, Automobiles and Highway Traffic § 631.
[3] 5A Am Jur, Automobiles and Highway Traffic § 611.

Appeal from Mason; Neal (Max E.), J. Submitted January 9, 1958. (Docket No. 31, Calendar No. 47,288.) Decided June 12, 1958.

Case by Esther Kiefer, administratrix of the estate of John H. Kiefer, deceased, against Kenneth Gosso and L. E. Myers Company, a Delaware corporation, under the death act for damages arising from automobile collision. Directed verdict for defendants. Plaintiff appeals. Reversed and remanded.

*Hathaway, Latimer, Clink & Robb* and *Vernon R. Keiser,* for plaintiff.

*Eugene Christman,* for defendant L. E. Myers Company.

KELLY, J. (*concurring*). Plaintiff's husband's death (January 12, 1952) was caused by a truck owned by defendant L. E. Myers Company and driven by its employee, Kenneth Gosso. Employee Gosso's negligence is beyond question. Plaintiff's husband was not guilty of contributory negligence in any way.

The circuit court for the county of Mason, at the close of all proofs, granted defendant L. E. Myers Company's motion for a directed verdict, stating that plaintiff had failed to sustain the burden of proof that employee Gosso was operating the truck with the permission or consent of defendant Myers Company, or with its knowledge, express or implied. The only question presented in this appeal is whether the court erred in granting defendant's motion for directed verdict.

Appellant's brief and appendix names both Gosso and L. E. Myers Company as defendants and appellees. Myers' brief lists Gosso merely as defendant

and Myers Company as defendant and appellee. Gosso was not represented by himself or by Myers Company at the trial. The appeal is as to both defendants and Gosso has never been dismissed as a party hereto.

Defendant L. E. Myers Company is a Delaware corporation with its principal offices in the city of Chicago. It constructs and repairs power lines in many States and maintains a division office in the city of Jackson.

For a period of time previous to the day of the accident, an electrical construction crew consisting of Gosso and 2 other employees had worked in the Ludington area under the direction of defendant's foreman, James Robert Young. This crew's work week started on Monday morning at 8 o'clock and finished on Friday night around 4 or 4:30 o'clock.

The collision between defendant's truck, driven by Gosso, and plaintiff's decedent's car occurred on a bridge on US-31 south of Ludington, on a Saturday afternoon about 4 p. m. On the Friday night preceding the collision, Gosso was instructed by foreman Young to drive the truck the next day (Saturday) to a garage for welding repairs. Gosso followed instructions on Saturday morning and drove to the designated garage, but was there informed that no one was available on that Saturday to do the welding work. Gosso then started out to visit friends, driving the truck. He visited at least 3 bars, 1 in Ludington and 2 in Pentwater, where he consumed either beer or liquor. He was driving on the wrong side of the highway as he struck plaintiff's decedent's car.

In directing verdict for defendant, the court stated that there was not a scintilla of evidence that Gosso had permission from his foreman Young, or from defendant company, to use the truck as he was

using it for hours preceding the fatal accident and at the time of the accident.

The record sustains the trial court's opinion in this regard, unless appellant's contention should be sustained—namely, that previous to the day of the collision Gosso's foreman (Young) had allowed Gosso to take the truck for his personal use and needs and that such permission made defendant company liable under the statute.

Gosso was called for cross-examination by plaintiff and testified that for a period of time before the accident he, with foreman Young's consent and knowledge, drove the truck back and forth to his home; that his foreman, Young, told him he could use the truck and that he did use the truck on "quite a few occasions" for personal purposes, such as picking up his laundry and dry cleaning; that he was with foreman Young when the truck was used (on company time) for putting up an antenna for a friend who ran a bar who was "always good for a friendly beer;" that he used the truck, with Young's knowledge, to pick up his daughters at the railroad station, and that at no time did he ever read any rules to the effect that employees were prohibited from using the truck for personal purposes, nor did Mr. Young ever at any time advise him that he could not use the truck for such purposes. Gosso was shown an employment card, which he had signed, containing a clause prohibiting the use of the truck for personal purposes and he admitted his signature but stated he did not read the provisions of the card before signing.

Gosso testified in regard to his actions on the day of the accident as follows: He said that he arose about 9:45 a. m. on that day and picked up the truck at the Ford garage at about 10:45 that morning. From there he went to Motyka's garage (on US–10 south of Ludington) to have the welding done and,

finding no one there to do the work, he left. It was then approximately 11 a. m. He went downtown in Ludington, picked up his laundry and dry cleaning, and went to his room. He then went to a tavern in Ludington, using the truck, after which he proceeded to Pentwater, a distance of 11 or 12 miles from Ludington, arriving in Pentwater about 2 p. m. After visiting 2 bars there he left Pentwater at about 3:30 or 3:45 p. m., and drove toward Ludington on US–31. The accident occurred at approximately 4 o'clock in the afternoon on US–31 a few miles south of the city of Ludington.

Defendant called witnesses to prove that the company restricted the use of motor vehicles by employees to company purposes. Mr. Forester, vice-president and treasurer of defendant company, stated he was responsible for preparing the employment cards and that "the company policy is that no employee is permitted to use, and that includes officers and directors of the corporation, any vehicle for personal use and business;" that said rule had been in existence in excess of 25 years; that said rule is promulgated to agents and officers periodically by letters; that the foremen have no authority to allow any employee to use company equipment for other than company purposes, but did admit on cross-examination that every once in a while the company obtained information that its orders were not followed.

V. E. McRoy, who was the superintendent of the western half of the lower peninsula, testified that a Mr. Ludlow was general foreman of the Ludington job, and that Ludlow understood that "the use of company equipment was always prohibited for personal use." McRoy was asked the following questions in regard to foreman Young:

"*Q.* And do you know that Mr. Young was informed?

"*A.* Mr. Young was informed.

"*Q.* Prior to January, 1952?

"*A.* Yes.

"*Q.* You testified under oath that Mr. Young had knowledge of the rule?

"*A.* I am sure he had."

Ludlow testified that he visited the job once or twice a week and that he would talk to the foreman of the district he visited, informing the foreman of company policies, safety rules and, also, giving assistance and laying out work. He stated in regard to Young: "I didn't have to lay out Robert Young's work. He was one of our best foreman."

Robert Young died before the trial of this case and his deposition was not taken previous to his death.

Appellant calls attention to section 401 of the motor vehicle code (PA 1949, No 300) being CLS 1956, § 257.401 (Stat Ann 1952 Rev § 9.2101), which provides:

"The owner of a motor vehicle shall be liable for any injury occasioned by the negligent operation of such motor vehicle whether such negligence consists of a violation of the provisions of the statutes of the State or in the failure to observe such ordinary care in such operation as the rules of the common law requires. The owner shall not be liable, however, unless said motor vehicle is being driven with his or her express or implied consent or knowledge."

The court in directing its verdict stated that *Anderson* v. *Schust Co.*, 262 Mich 236, was controlling, and appellee in its brief agrees with the court and stresses this case.

In the *Schust Case* the company's employee was charged with negligent driving as he proceeded from Grand Rapids, where he was employed, to Pincon-

ning, approximately 150 miles away, where he intended to visit his father. He drove defendant's vehicle with defendant's foreman's consent but contrary to defendant's orders.

The *Schust Case* differs from the present case because there was no evidence in that case that on occasions previous to the day of the accident defendant's foreman had allowed said employee the use of defendant's vehicle for his own personal use. This Court, in affirming a directed verdict for defendant in the *Schust Case,* stated (p 240):

"There is no question but that Mr. Rohring (branch manager) had instructions the motor vehicles of defendant were to be used only in the business of the defendant, and were not to be used for private purposes."

In directing verdict in the present case, the trial court stated:

"Both Gosso and Young under the proofs were aware defendant company policy and rules prohibited the use of the motor vehicles belonging to defendant company by their employees for their personal or private use."

Nothing in this record sustains the trial court's conclusion in this regard. Officers and executives of the defendant company testified as to the company's policy and rules, but none testified of ever having so personally informed Gosso. The same witnesses expressed conclusions that foreman Young knew he was disobeying policy and rules in allowing Gosso the use of the truck for personal purposes, but none testified as to any conversation with Young in this regard.

Viewing the testimony in the light most favorable to plaintiff, as we must do in this kind of an appeal, we can only conclude that on the Saturday morning

when Gosso found the truck could not be welded and repaired, he was of the opinion he would not be violating company rules and policy to use said truck for his 11-mile jaunt to a nearby village to visit friends.

Defendant company was engaged in construction work in many States and had to meet the problem of obtaining the services of employees who worked and lived at a distance from their homes. Foreman Young was described by his superior officers as "one of our best foremen." Young did not on this day of the fatal accident give the truck to Gosso to drive over 150 miles for his own personal needs and pleasure, as were the facts in the *Anderson* v. *Schust Co. Case.* There is no testimony connecting Young in any form, shape or manner with the Saturday episode, except Young's instructions on Friday night to Gosso to do that which Gosso tried to do on Saturday morning plus Young's previous approval of Gosso using said truck for his own personal use when such use did not interfere with defendant's need of the truck for its business.

In *Reitenga* v. *Kalamazoo Creamery Co.,* 288 Mich 161 (8 NCCA NS 28), defendant's employee delivered an ice cream mixture over an established route north and west of Kalamazoo; defendant company operated a fleet of 28 trucks, parking said trucks in a lot near the creamery, with keys kept in the vehicles. On the day preceding the accident the employee finished his work about 1:30 p. m. and, with his foreman's consent, took one of defendant's vehicles to move his mother's household effects. He accomplished this mission and returned defendant's truck to the parking lot about 9:30 that night; he then proceeded to visit several taverns and later that night returned to defendant's lot taking one of defendant's vehicles and proceeded to drive toward

his home. It was on this trip that the accident occurred.

Defendant's employee testified he had been given permission by defendant's sales manager and by its wholesale route supervisor to use defendant's truck to drive to his home at night so that he might arrive at the creamery early enough mornings to begin deliveries. Defendant's sales manager and, also, its route supervisor denied this testimony and denied having given the employee consent to such use of the trucks. Each further testified that neither had the authority to authorize the personal use of trucks by employees.

This Court in the *Reitenga Case* affirmed the judgment for plaintiff, and commented upon the testimony of defendant's witnesses that they did not give consent for the use of the truck and had no authority to do so, by stating (p 163): "There runs through the testimony of defendant creamery company's witnesses, however, evidence of loose control over the use of trucks that stood in the parking lot as well as permissive use by Northrup (employee) and others on certain occasions."

Our Court in this *Reitenga Case* held that the question was not one for the trial court but rather for the jury and further commented upon *Anderson* v. *Schust Co., supra,* as follows (pp 164, 165):

"Appellant argues that *Anderson* v. *Schust Co.,* 262 Mich 236, is controlling and that a verdict for defendant should have been directed. In the *Anderson Case* the consent was given by defendant's agency manager, who was not acting at the time within the apparent scope of his authority or in furtherance of the business of defendant but in violation of its positive orders and instructions."

In *Kerns* v. *Lewis,* 246 Mich 423, 425, 426, this Court dealt with the question as to whether the own-

er of a vehicle must know that it was being driven by a particular person, and stated:

"Does the essential consent mentioned in the statute relate to the *driver,* or to the vehicle 'being driven'? The statute makes the owner liable if the 'motor vehicle is being driven with his or her express or implied consent or knowledge,' and we cannot read into it the restriction that the particular driver must be known by and his driving consented to by the owner. The statute may be drastic, but we cannot render it less so by any permissible construction."

In *Wingett* v. *Moore,* 308 Mich 158, this Court stated that implied consent may be gathered from a consideration of all the facts and circumstances and it is usually a question of fact for the jury and the jury has the right to draw reasonable inferences from the disclosed facts and circumstances.

We are not dealing in this appeal with the *respondeat superior* doctrine and, as we stated in the recent case of *Peyton* v. *Delnay,* 348 Mich 238, 248, the statute we interpret here is not a derivative of the *respondeat superior* doctrine. It is a measure adopted by the legislature to promote public safety by holding automobile owners accountable for certain negligent acts of the persons to whom they entrust their automobiles.

We agree with appellant's contention that "defendant's testimony as to company policy, letters to superintendents and safety meetings of supervisors and foremen merely raise an issue of fact. The trial judge erroneously accepted defendant's proofs as being conclusive and overcoming any implied authority arising out of the course of conduct, thus watering the favorable-to-plaintiff testimony."

The case should have been submitted to the jury for determination. The directed verdict and judg-

ment is set aside and the case remanded for new trial. Costs to appellant.

DETHMERS, C. J., and CARR, J., concurred with KELLY, J.

EDWARDS, J. In this case we deal with a granted motion for a directed verdict. Hence, we view the facts from the light most favorable to the plaintiff. *Hulett* v. *Great Atlantic & Pacific Tea Co.,* 299 Mich 59; *Anderson* v. *Kearly,* 312 Mich 566; *Peyton* v. *Delnay,* 348 Mich 238.

Taking such a favorable view of the facts, it appears plain that there was evidence from which the jury could have found that defendant Gosso frequently drove defendant Myers Company's truck on personal business with the full knowledge and implied consent of defendant Myers' agents. There is also evidence from which the jury could have found such implied authority extending to the Saturday trip which resulted in this fatal accident. The recitation of the facts set forth in Mr. Justice KELLY's opinion amply sustains these conclusions.

This case was tried before a circuit judge before this Court's decision in *Moore* v. *Palmer,* 350 Mich 363, had been handed down.

Relying principally upon *Anderson* v. *Schust Co.,* 262 Mich 236, the circuit judge felt compelled to direct a verdict. *Anderson* was one of a long list of cases wherein this Court modified the owner liability statutory test of the owner's actual or implied consent or knowledge of the driving, by the additional test, in employee driver situations, of scope of employment.

In *Moore* v. *Palmer, supra,* 4 members of this Court voted to overrule this judicial modification of

the owner liability statute for reasons set forth in full in the writer's opinion therein.

We concluded (p 394):

"The Michigan owner liability act, CLS 1954, § 257.401 (Stat Ann 1952 Rev § 9.2101), is an enactment founded upon the police power of the State. Its obvious purpose is to make owners of automobiles liable for the negligent acts of those to whom they entrust their vehicles. Liability under the statute is not limited by the common-law tests applicable to the master-servant relationship. The fact that a common-law action under the master-servant doctrine preceded the statute (and still exists) does not create any exception from the terms of the statute in favor of employers as a class.

"The statute carries within it its own test as to owner liability: whether 'said motor vehicle is being driven with his or her express or implied consent or knowledge.' CLS 1954, § 257.401 (Stat Ann 1952 Rev § 9.2101)."

We will not repeat here the lengthy analysis of previous cases in this and other jurisdictions which led to this conclusion in the *Moore Case*.

On the reasoning of the *Moore* opinion referred to, this case is reversed and remanded for new trial as to both defendants.

SMITH, BLACK, VOELKER, and KAVANAGH, JJ., concurred with EDWARDS, J.