ROBERTS *v.* POSEY

OPINION OF THE COURT

1. AUTOMOBILES — NEGLIGENCE — OWNER'S LIABILITY — CONSENT — STATUTES.

   The owner of a motor vehicle is liable for injuries caused by another who is using the owner's vehicle with the owner's express or implied consent or knowledge; however, where the owner's consent is limited, use beyond that limit does not make the owner liable (MCLA § 257.401).

2. AUTOMOBILES—NEGLIGENCE—OWNER'S LIABILITY—CONSENT—LIMITED CONSENT.

   Owner of a motor vehicle was not liable for injuries caused by the negligence of a person driving the owner's car where the owner had consented to the use of his car for the express purpose of allowing the borrower to pick up his paycheck and the owner admonished the borrower to bring the car back no later than 11:30 a.m., where the borrower agreed to the limitations, and where the accident occurred the morning of the next day (MCLA § 257.401).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4, 5] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 595, 606.
[3] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 595, 605.
[6] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 595, 598, 605.
[7] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 605, 606, 615.
[8] 8 Am Jur 2d, Automobiles and Highway Traffic § 606.
[9] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 595, 597.
[10] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 595, 597, 606.

CONCURRING OPINION
LEVIN, J.

3. AUTOMOBILES—NEGLIGENCE—OWNER'S LIABILITY—STATUTES.

*The owner of an automobile is statutorily responsible for injuries occasioned by the negligent driving of his automobile if it is being driven with his express or implied consent or knowledge (MCLA § 257.401).*

4. AUTOMOBILES—NEGLIGENCE—OWNER'S LIABILITY.

*The owner of an automobile may place limitations on his consent to another's use of his car and is not liable unless the vehicle is being driven for a purpose and at a time within the express or implied scope of the consent (MCLA § 257.401).*

5. AUTOMOBILES — NEGLIGENCE — OWNER'S LIABILITY — STIPULATED FACTS.

*A judgment of no cause of action was proper where the parties stipulated that at the time of the accident the borrower of the defendant's automobile was operating it for a purpose and at a time beyond the scope of the agreement with the owner of the automobile (MCLA § 257.401).*

6. AUTOMOBILES — NEGLIGENCE — OWNER'S LIABILITY — PURPOSE OF STATUTE.

*The purpose of the civil liability act is to subject the owner of an automobile to liability whenever his automobile is being driven with his express or implied consent or knowledge without a showing of negligence in the entrustment (MCLA § 257-.401).*

7. AUTOMOBILES — NEGLIGENCE — OWNER'S LIABILITY — MASTER AND SERVANT.

*The scope of the owner-employer's consent is to be considered in cases in which he is sought to be held liable for injuries caused by negligence of one of his employees while driving one of the owner's vehicles; no longer is the scope of employment test to be considered (MCLA § 257.401).*

8. AUTOMOBILES — NEGLIGENCE — OWNER'S LIABILITY — EVIDENCE — SCOPE OF CONSENT.

*A defendant sought to be held liable for injuries caused by the negligence of a person driving the defendant's car with the defendant's consent should not be allowed to show that the driver's use of the car exceeded the scope of the consent (MCLA § 257.401).*

9. AUTOMOBILES—NEGLIGENCE—OWNER'S LIABILITY—PUBLIC POLICY
—CONSTRUCTION OF STATUTE.

*The purpose of the civil liability act is to permit a person
injured by a negligent driver to sue the owner of the vehicle;
this purpose is not advanced by a construction of the statute
which allows the question of owner's liability to turn on
whether the plaintiff was injured before or after a certain hour
or whether the driver was on one mission or another.*

10. AUTOMOBILES — NEGLIGENCE — OWNER'S LIABILITY — KNOWL-
EDGE OF USE—CONSTRUCTION OF STATUTES.

*Statutory language imposing liability on the owner of a vehicle
for injuries caused by the driver of the vehicle who is driving
it with the owner's "express or implied consent or knowledge"
is to be read disjunctively; it is sufficient that the owner had
knowledge of the use of his automobile; it is of no impor-
tance that the owner limited his consent (MCLA § 257.401).*

Appeal from Wayne, George E. Bowles, J. Sub-
mitted Division 1 May 12, 1970, at Detroit. (Docket
No. 6,918.) Decided August 24, 1970. Leave to ap-
peal granted October 27, 1970. 384 Mich 772.

Complaint by Kenneth Roberts against Leonard
Posey, as owner, for automobile negligence. Judg-
ment of no cause of action. Plaintiff appeals. Af-
firmed.

*Metry, Metry, Sanom, Ashare & Goldman (A.
Jerome Allen, of counsel),* for plaintiff.

*Blum & Sternberg, Chartered,* for defendant.

Before: R. B. BURNS, P. J., and LEVIN and CHUR-
CHILL,* JJ.

CHURCHILL, J. Plaintiff, Kenneth Roberts, who
was injured on September 11, 1965, when his auto-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

mobile was struck in the rear by another automobile owned by defendant, Leonard Posey, and driven by James Montague, brought this action in Wayne County Circuit Court against defendant Posey alone to recover his damages. After a non-jury trial, the trial judge filed a written opinion that the plaintiff was entitled to recover damages in the sum of $6,000. Prior to the entry of that judgment, he filed a supplemental opinion, expressly reversing himself and directing the entry of a judgment of no cause of action. Such a judgment was entered and the plaintiff appeals.

Pursuant to GCR 1963, 812.10 the parties filed a stipulation in this Court that the statement of facts in the appellee's brief shall comprise the agreed statement of facts on appeal. The statement of facts leaves no doubt that the accident and the plaintiff's injuries were proximately caused by the negligent operation of the defendant's auto by Montague. The other significant facts may be summarized as follows, with certain direct quotations from the agreed-upon statement receiving our emphasis:

On September 10, 1965, at 10 in the morning, Montague visited the home of the defendant, an ordained minister, and requested the loan of the defendant's auto *for the express purpose of going to pick up his paycheck*. The defendant agreed to allow Montague to use his vehicle but *admonished him at the time that the auto must be brought back no later than 11 or 11:30 a.m.* so the defendant could use it for church business at that time. Montague, agreeing to the limitation, took the car. It was not returned at the agreed time. That afternoon the defendant became concerned about the whereabouts of his auto and made every reasonable effort to locate it, including notification to the police that it was missing. The defendant was unable to locate it until after it

had been driven by Montague, early the next morning, into the rear of the plaintiff's car.

The defendant is charged with no fault. The sole question, on appeal, is whether, on these stipulated facts, the defendant is responsible for the plaintiff's damages by operation of the civil liability act. MCLA § 257.401 (Stat Ann 1968 Rev § 9.2101). The statute contains its own express limitation:

"The owner shall not be liable, however, unless said motor vehicle is being driven with his or her express or implied consent or knowledge."

This statute was most recently construed in a limited consent situation in *Detroit Automobile Inter-Insurance Exchange* v. *Swift* (1968), 11 Mich App 166, where this Court restated the rule that where consent is limited, use beyond that limit does not make the owner liable.

Consent and limitations thereon are ordinarily fact questions with the plaintiff having the burden. *Detroit Inter-Insurance Exchange* v. *Gordon* (1968), 15 Mich App 41. Here, by the stipulated facts, and also by the trial judge's findings,** the plaintiff failed to sustain that burden. The trial judge correctly reversed himself and the judgment for the defendant is affirmed.

R. B. BURNS, P. J., concurred.

LEVIN, J., (*concurring*). I agree with my colleagues that the judgment of the trial court must be affirmed for the reasons stated in Judge CHURCHILL's opinion. It was stipulated that the defend-

---

** In the supplemental opinion the trial judge stated:
"On the facts we must hold that he was not driving reasonably with the granted consent; he was on a personal, independent joyride of his own the next day after the consent had been given and over 12 hours after the period of time within the permitted use."

ant, Leonard Posey, agreed to permit James Montague to use his automobile for 1 to 1-1/2 hours for the limited purpose of going to pick up a paycheck and that in violation of the agreement Montague went on an unauthorized excursion culminating over 12 hours later in the collision between the plaintiff's and Posey's automobiles.

While the civil liability act makes an owner responsible for injuries occasioned by the negligent driving of his automobile if it is being driven with his express or implied consent or knowledge,[1] under controlling precedent (*Merritt* v. *Huron Motor Sales, Inc.* [1937], 282 Mich 322)[2] an owner may place limitations on his consent and is not liable unless the vehicle is being driven for a purpose and at a time within the express or implied scope of the consent.[3]

Since the parties have in effect stipulated that at the time of the accident Posey's vehicle was being operated for a purpose and at a time beyond the scope of the agreement,[4] the trial judge correctly

---

[1] MCLA § 257.401 (Stat Ann 1968 Rev § 9.2101).

[2] In *Merritt*, the sales manager of the corporate defendant, the owner of the automobile, lent it to a friend in the early evening to enable him to visit a sick friend in a nearby city, the vehicle to be returned to the sales manager at 10 p.m. so that he could call for his daughter who was to attend a school party that night. The vehicle was not returned at the agreed time and the terms of the agreement were further violated when the driver, with three other companions, took the car to another city where the accident occurred at 2 a.m. in the morning. The Supreme Court held that on those facts the automobile was not being driven with the express or implied consent or knowledge of the owner of the vehicle.

[3] Similarly, see *Union Trust Co.* v. *American Commercial Car Co.* (1922), 219 Mich 557. However, implied consent may be inferred from a consideration of all the facts and circumstances, and is usually a question for the jury. *Wingett* v. *Moore* (1944), 308 Mich 158, 161; *Cebulak* v. *Lewis* (1948), 320 Mich 710. See, also, *Mumma* v. *Brown* (1967), 378 Mich 637, and *Dortman* v. *Lester* (1968), 380 Mich 80.

[4] This is a somewhat unusual case. Here the parties stipulated that the use was for a purpose and at a time beyond the scope of the consent. Ordinarily a question for the trier of fact would be presented because of the presumption that the driver of the vehicle was, at the time of the accident, driving with the consent and knowl-

entered a judgment of no cause of action.

I write separately because in my opinion the case law allowing an owner to place limitations on his consent should be reexamined, and because it appears from decisions of the Supreme Court of Michigan that the Court may be prepared to reconsider the question.

### I.

Before the passage of the civil liability act, an owner could be held liable either (1) under the family car doctrine,[5] (2) on an agency theory[6] or (3) for negligent entrustment of the vehicle to a driver known at the time of the entrustment to be incompetent.[7] The act was designed to extend the owner's liability beyond these limited situations and to subject him to liability whenever his automobile is driven with his express or implied consent or knowledge without a showing of negligence in the entrustment.

The pertinent language of the act reads:

"The owner of a motor vehicle shall be liable for any injury occasioned by the negligent operation of such motor vehicle whether such negligence consists of a violation of the provisions of the statutes of the state or in the failure to observe such ordinary care in such operation as the rules of the common law requires. The owner shall not be liable, how-

---

edge of the owner. See *Detroit Auto Inter-Insurance Exchange* v. *Gordon* (1968), 15 Mich App 41, 43.

See, also, *Peterson* v. *Grieger, Inc.* (1961), 57 Cal 2d 43, 52 (17 Cal Rptr 828, 833, 367 P2d 420), declaring that it is a jury question whether there has been a substantial violation of restrictions imposed by the owner on the use of the automobile.

[5] 2 Harper and James, Law of Torts, § 26.15 pp 1419–1424; Prosser, Law of Torts (3rd ed), § 72, p 496.

[6] 2 Harper and James, Law of Torts, § 26.13 pp 1413–1418; Prosser, Law of Torts (3rd ed), § 72, p 495.

[7] See *Perin* v. *Peuler* (On Rehearing, 1964), 373 Mich 531; *Chapman* v. *Buder* (1968), 14 Mich App 13, 23.

ever, unless said motor vehicle is being driven with his or her *express or implied consent or knowledge.*"[8] (Emphasis supplied.)

The courts were, however, quick to superimpose agency concepts on the statutory language.[9] In *Kieszkowski* v. *Odlewany* (1937), 280 Mich 388, 393, the driver, who was on his employer's business, deviated 1/2 block from a feasible route to visit a friend —a personal, not a business, purpose. The Court declared that the "deciding factor is not the degree of the deviation, but rather, whether the owner impliedly consented to the route taken. * * * [F]ailure to specify a particular route does not, of itself, permit a personal use of the vehicle, and unless consent can be implied from some other source, such use is a deviation."

The opinion of the Court reflects the state of the law at the time (pp 393, 394):

"Some attempt is made to distinguish the decisions on this question where a master and servant relation is involved from those wherein the lender-borrower situation exists. There is no distinction insofar as the applicable legal theory is concerned, CL 1929, § 4648 governs both instances. Where a master and servant relation exists, the implied consent of the owner of the vehicle extends to the scope of employment. When the servant is outside the scope, he is outside the consent; the terms are co-extensive, and, as used in this sense, have the same meaning. The scope of employment is merely the measuring rod by which it can be determined whether the servant was acting within the implied consent of the employer. The lender-borrower rela-

---

[8] See fn 1 for citation of statute.

[9] Prosser, Law of Torts (3rd ed), § 73, pp 499, 500; 8 Am Jur 2d, Automobiles and Highway Traffic, § 606; 6 Blashfield, Automobile Law and Practice (3rd ed), § 254.10, pp 338–341, and § 254.12, pp 343–345. But see *Baker* v. *Rhode Island Ice Co.* (1946), 72 RI 262 (50 A2d 618).

tion has no measuring rod, but the theory of implied consent is the same."

## II.

In *Moore* v. *Palmer* (1957), 350 Mich 363, Mr. Justice EDWARDS, in an opinion signed by three other justices, reviewed earlier decisions of the Court and declared that limitations inherent in the common-law doctrine of *respondeat superior,* particularly the "scope of employment" criterion, are not part of the statutory definition (p 394):

"The Michigan owner liability act, [citation omitted] is an enactment founded upon the police power of the State. Its obvious purpose is to make owners of automobiles liable for the negligent acts of those to whom they entrust their vehicles. Liability under the statute is not limited by the common-law tests applicable to the master-servant relationship. The fact that a common-law action under the master-servant doctrine preceded the statute (and still exists) does not create any exception from the terms of the statute in favor of employers as a class.

"The statute carries within it its own test as to owner liability: Whether 'said motor vehicle is being driven with his or her express or implied consent or knowledge.'"

In subsequent opinions the Michigan Supreme Court adopted this view of the act, declaring that the liability of an owner-employer for the acts of his driver is not dependent upon or limited by the integrants of the common-law doctrine of *respondeat superior* and, specifically, that merely because an employee has deviated from the scope of his employment did not automatically relieve his owner-employer from statutory liability.

In *Kiefer* v. *Gosso* (1958), 353 Mich 19, the Court expressly overruled *Anderson* v. *Schust Co.* (1933),

262 Mich 236, which, said the *Kiefer* Court, had (p 29) "modified the owner liability statutory test of the owner's actual or implied consent or knowledge of the driving, by the additional test, in employee driver situations, of scope of employment". The *Kiefer* Court quoted and adopted the text from *Moore* set forth and quoted above.

The Michigan Supreme Court has not, however, ruled that an owner-employer is liable for injuries caused by his vehicle when used by an employee authorized to use it, without regard to whether the specific use was for a purpose and at a time authorized by the owner-employer. In *Kiefer*, also written by Justice EDWARDS, the Court stressed the evidence in that case which would support a finding that the driver's use of the vehicle on his personal business was "with the full knowledge and implied consent" of the owner's agents and that, therefore, the trier of fact could have properly found that the driver had "implied authority" to use the vehicle at the time of the accident. Similarly, see *Citizens' Mutual Automobile Insurance Company* v. *Houtz* (1960), 361 Mich 309[10] and *Ketola* v. *Frost* (1965), 375 Mich 266.[11]

---

[10] In *Citizens'*, the record shows that the driver was authorized to use the vehicle by the owner-employer's foreman and that it was being used on the employer's business. The Court declared that in the light of a recent decision it was unnecessary for the plaintiffs to prove liability under the doctrine of *respondeat superior* (p 311):

"It was enough that plaintiffs establish that the tractor was, on the occasion, driven by Sines with the express or implied consent or knowledge of defendant."

The decision referred to is *Frazier* v. *Rumisek* (1960), 358 Mich 455, where, in deciding that an action could be brought under the civil liability act against less than all the co-owners and that the action survived the death of the co-owner sued, the Court observed (pp 457, 458):

"The owner liability statute before us was passed in response to an overwhelming public need. Common-law liability, circumscribed as it was by the doctrine of bailment, *respondeat superior*, agency, and the like, was unable to cope with the rising tide of injuries resulting from the use of the new mechanism, the automobile. Principal

In all the cited cases, *Moore, Kiefer, Citizens' Mutual Automobile Insurance Company,* and *Ketola,* the owner had given his express or implied consent to use the vehicle for the purpose and at the time it was being used when the accident occurred. The emphasis in *Kiefer* on the evidence which would support a finding that the owner-employer had "impliedly consented" to the personal use of the automobile by the driver makes it clear that we cannot properly read these decisions of the Supreme Court as eliminating the necessity of showing that the consent, express or implied, was to the driver's particular use of the vehicle. While it is no longer permissible to inquire whether the use was outside the

---

among the legislative answers were the owner liability laws. Their purpose, as Mr. Justice EDWARDS held in *Moore* v. *Palmer,* 350 Mich 363, was to extend and complement the common law. The legislative theory was simple to state and broadly applicable: An owner was liable for the negligent operation of the machine owned by him when he had consented to its use. The liability is broader than that imposed by the doctrine of *respondeat superior,* and to the degree that older cases, including *Mittelstadt* v. *Kelly,* 202 Mich 524, and other like cases referred to in *Moore* v. *Palmer, supra,* are based upon the *respondeat superior* doctrine, they were held, by Mr. Justice EDWARDS, with whom we concurred, to be 'expressly overruled.' "

Similarly, see *Mosier* v. *Carney* (1965), 376 Mich 532, where, in an opinion by Mr. Justice SOURIS, signed also by three other justices, the following observation appears (p 557):

"[I]n *Moore* v. *Palmer* (1957), 350 Mich 363, four members of the Court (and subsequently a majority, see, *e.g., Kiefer* v. *Gosso* [1958], 353 Mich 19) held that liability under the owner liability act is not predicated upon the doctrine of *respondeat superior.*"

11 In *Ketola* the accident occurred while the driver was using the tractor portion of a truck-tractor on personal business. The driver owned the vehicle but had leased it on a long-term lease to defendant, Allied Van Lines, which thereby became a statutory owner. The lease provided that the lessor may use the vehicle on his own business when it is not needed in the lessee's business. The Supreme Court rejected the lessee's contention that when so in use on the lessor's personal business the statutory liability of the long-term lessee as owner was inapplicable. In so holding the Court declared (pp 279, 280):

"So, whether Frost [driver and owner-lessor] was or was not engaged at the time in carrying out a purely personal mission, defendant Allied Van Lines, Inc., was liable as such owner 'for the acts and conduct of defendant William Dolan Frost.' *Moore* v. *Palmer,* 350 Mich 363."

scope of an employee-driver's employment, it is still necessary to determine whether the particular use was outside the scope of the consent, express or implied, given by the owner.

Since evidence formerly relevant to the scope-of-employment issue is likely to be relevant to the scope-of-consent issue, the judicial inquiry has simply shifted in employee-driver cases from whether, at the time of the accident, the driver was driving within the scope of his employment to whether, at that time, he was driving within the scope of the owner-employer's consent. It is much to be doubted whether this change in emphasis, although conceptually correct, has had any significant impact in the trial of cases.

## III.

In my opinion it should not be open to a defendant-owner to show that the driver's use of the vehicle exceeded the scope of the consent. The legislatively-established public policy of allowing a person injured by a negligent driver to sue the owner who had the opportunity to decide whether to entrust the automobile to the driver and chose to do so is not advanced by a construction of the act which lets the question of the owner's liability turn on whether the plaintiff was injured before or after a certain hour or whether the driver was on one mission or another.

As the *Merritt* case illustrates (see fn 2), there is a strong possibility of exaggeration or prejury in testimony concerning restrictions on the owner's consent. The terms of the consent are usually within the knowledge only of the owner and the driver, frequently a relative, employee, or close friend. Both may be strongly interested in the outcome of the case.

The view here expressed finds support in the use
of the disjunctive "or" in the phrase "consent *or*
knowledge." Since Posey's knowledge[12] that Mon-
tague was driving his automobile is enough, it is of
no importance that Posey limited his consent.

The statute speaks simply of use of an automobile
with the owner's "express or implied consent or
knowledge". This statute, enacted to provide a
remedy where none existed under conventional prin-
ciples of agency and other common-law doctrines,
should never have been constricted by the limitations
appurtenant to such doctrines.

"In the typical case a friend or member of the
owner's family, perhaps a dependent minor, causes
injury by driving the vehicle negligently. Unless
the injured plaintiff can get at the owner's assets or
liability insurance, he may gain nothing from litiga-
tion except an uncollectible judgment."[13]

---

[12] I recognize that knowledge acquired under circumstances show-
ing that there was no consent whatsoever, *e.g.*, the owner saw a
thief take his car, is not the kind of knowledge contemplated by
the statute. The legislature addressed itself to the typical, not the
atypical case. That the language chosen does not fit in the ex-
traordinary case hypothesized, and presumably not legislatively con-
templated, is not a sound reason for refusing to give it full effect
in the typical case at which the legislation is plainly directed.

[13] The Owner Consent Statutes: The Distinctions Between Enter-
prise and Instrumentality Liability, 31 Chicago L Rev 355 (1964).
This article is favorably commented on in the supplement (1968)
to 2 Harper & James, Law of Torts, § 26.16, n 6, p 171:

"The restrictive cases are severely criticized in Comment, 31 U of
Chi L Rev 355 (1964). The author of the comment notes that the
restrictions have been applied on the analogy of similar restrictions
in master and servant cases. Scope of consent has been roughly
equated to scope of employment. But although 'the parallel was
neat, a close look at the underlying policies would have revealed
fundamental differences between the enterprise liability of *respondeat
superior* and the instrumentality liability of the owner consent stat-
utes.' Limitations on the former reflect a judgment concerning the
risks which may properly be regarded as generated by the employer's
business enterprise (and therefore properly borne by or distributed
through it as author of the risks). But the car owner's liability
'is not based on driver's being about the owner's business,' but rather
on the fact 'that the owner has entrusted the driver with a vehicle,

Montague came into possession of the automobile rightfully—with Posey's express consent *and* knowledge. The fact that Montague broke his word, did not faithfully return the automobile when promised, and used it for a purpose for which it was not intended, exposing himself to liability to Posey on that account, should not be a good defense to this statutory liability imposed for the protection of the public at large which was not privy to the agreement between Montague and Posey and did not have Posey's opportunity to prevent Montague's use of the vehicle.

I find myself in agreement with the view expressed by Mr. Justice Potter, with the concurrence of Mr. Justice McAllister, in dissent in *Kalinowski* v. *Odlewany* (1939), 289 Mich 684, 695, where he observed:

"The statute imposes liability if the owner lets the employee take the motor vehicle and such liability attaches whether the employee[14] did what he was told to do with the motor vehicle or not."

Similarly, see *Baker* v. *Rhode Island Ice Co.* (1946), 72 RI 262 (50 A2d 618); *cf: Grant* v. *Knepper* (1927), 245 NY 158 (156 NE 650); contrast *Chaika* v. *Vandenberg* (1929), 252 NY 101 (169 NE 103).[15]

---

and thus given him the power to cause injuries by driving negligently.'

"It is submitted that this reasoning is persuasive."

[14] In *Kalinowski* the driver was an employee, but it is apparent, upon an examination of Mr. Justice Potter's opinion, that his view of the matter would have been the same had the driver not been an employee and he had borrowed the automobile from the owner.

[15] In the opinion of the Court in this case, reliance is placed on *Detroit Automobile Inter-Insurance Exchange* v. *Swift* (1968), 11 Mich App 166, where we held, on the authority of earlier decisions of the Michigan Supreme Court, that an owner who authorizes his child to use a family automobile but expressly forbids him to allow anyone else to drive the automobile has not expressly or impliedly consented to use by one to whom the child, in violation of his parent's instructions, entrusts the vehicle. The issue there dealt with is dif-

ferent from the issue here presented where the owner himself selects the driver and makes the mistake of entrusting his automobile to one who is not reliable and who uses it for a purpose and at times beyond the scope of the agreement. But see *F. D. McKendall Lumber Co.* v. *Ramieri* (1956), 85 RI 92 (126 A2d 560); *Grant* v. *Knepper, supra.*