ENSIGN v CRATER

1. AUTOMOBILES—OWNER'S LIABILITY—CONSENT—COMMON-LAW PRE-SUMPTION.

The common-law presumption that the operator of a motor vehicle at the time of an accident is driving with the owner's consent and knowledge applies when the operator is not a member of the owner's immediate family; the statutory presumption applies when the operator is a family member.

2. AUTOMOBILES—OWNER'S LIABILITY—CONSENT—PRESUMPTION.

The presumption, whether statutory or common-law, that the operator of a motor vehicle is driving it with the owner's consent and knowledge has been made stronger by the courts because of the high degree of danger involved in the operation of a motor vehicle and because the owners are usually the only persons who know the facts regarding consent (MCLA 257.401).

3. AUTOMOBILES—OWNER'S LIABILITY—CONSENT—PRESUMPTION—RE-BUTTAL—EVIDENCE.

Positive, unequivocal, strong and credible evidence must be adduced to rebut either the statutory or common-law presumption that the operator of a motor vehicle is driving it with the owner's express or implied consent and knowledge (MCLA 257.401).

4. AUTOMOBILES—OWNER'S LIABILITY—CONSENT—COMMON-LAW PRE-SUMPTIONS—REBUTTING PRESUMPTION—EVIDENCE.

Denial of defendant's motion for judgment notwithstanding the verdict in an action against him for allowing his daughter's boyfriend to operate his automobile negligently constituted

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 595 *et seq.*, 913.

Validity, construction, and effect of statutes which make the owner responsible or create a lien for injury or death inflicted by another operating an automobile. 135 ALR 481.

[3, 4] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 913, 1000.

Overcoming inference or presumption of driver's agency for owner, or latter's consent to operation, of automobile. 5 ALR2d 196.

reversible error where defendant, his wife, his daughter, and the boyfriend testified defendant neither knew nor consented to the operation of his automobile by anyone except his daughter, who had been given strict orders that no one else was to drive it (MCLA 257.401).

Appeal from Hillsdale, Robert W. McIntyre, J. Submitted Division 2 December 7, 1971, at Lansing. (Docket No. 11314.) Decided June 26, 1972. Appeal dismissed with prejudice by stipulation, 389 Mich 791.

Complaint by Eli Ensign, for himself and as next friend of Terry L. Ensign, against Bernard Crater and Robert L. Smith for negligent operation of an automobile. Defendant Smith defaulted. Verdict and judgment for plaintiff. Defendant Crater appeals. Reversed and remanded for entry of judgment notwithstanding the verdict.

*Kelly, Kelly & Kelly,* for plaintiffs.

*Richard F. Biringer,* for defendant Crater.

Before: McGregor, P. J., and Bronson and Targonski,* JJ.

Targonski, J. Defendant Bernard Crater was the owner of a 1967 Plymouth automobile that in the early morning hours of September 26, 1967, was being operated by defendant Robert Smith. Defendant Crater's 17-year-old daughter was given permission to use the family car until midnight for the purpose of driving her younger brother to a fair. Colleen Crater, the daughter, was given explicit instructions that she was to have the car home before midnight, and that no one else was to drive the automobile.

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

While at the fair, Colleen met a boyfriend and together they used the car for the purpose of driving to Ohio to obtain beer. About five or ten minutes before midnight, Colleen dropped her younger brother off at home, and she and some of her friends went to a lake lot owned by Bernard Crater where they had a beer party. At approximately 2 a.m., the party broke up and nine or ten people got into the Crater car which at that time was being driven by defendant Robert Smith.

Smith was driving the car at a high rate of speed, and when someone in the group thought a police car was following them, the defendant accelerated to a higher rate of speed, ran a stop sign, and failed to negotiate a curve in the road. The car rolled over and hit a railroad embankment. Plaintiff Terry Ensign was seriously injured in the accident.

The present suit was begun and defendant Robert Smith defaulted. The case went to trial before a jury and at the conclusion of the plaintiffs' case, defendant Crater made a motion for a directed verdict on the grounds that he was not liable to the plaintiffs in that there had been no showing that the car was being driven with his express or implied consent. His motion was denied, but was renewed at the end of the defendant's case. This motion was also denied, and the jury returned a verdict against both defendants in the sum of $60,000. Following the jury verdict, the defendant made a motion for a new trial and, in the alternative, for a judgment notwithstanding the verdict. This motion was denied and consequently, we granted leave to appeal to defendant Bernard Crater.[1]

The sole issue for our consideration is whether

---

[1] Defendant Robert Smith chose not to participate in this appeal.

defendant Crater was entitled to a directed verdict, or to a judgment notwithstanding the verdict, on the ground that the car was being operated by Robert Smith at the time of the accident without his knowledge or consent.

The civil liability act of owners and operators of motor vehicles states, in pertinent part:

"The owner of a motor vehicle shall be liable for any injury occasioned by the negligent operation of such motor vehicle whether such negligence consists of a violation of the provisions of the statutes of the state or in the failure to observe such ordinary care in such operation as the rules of the common law requires. The owner shall not be liable, however, unless said motor vehicle is being driven with his or her express or implied consent or knowledge. *It shall be presumed* that such motor vehicle is being driven with the knowledge and consent of the owner if it is driven at the time of said injury by his or her father, mother, brother, sister, son, daughter or other immediate member of the family * * * ." MCLA 257.401; MSA 9.2101 (emphasis added).

While the statutory presumption of knowledge and consent to the use of a motor vehicle does not apply in the instant case because the motor vehicle at the time of the accident was not being operated by a member of the immediate family of defendant Crater, the common-law presumption that the operator of the vehicle at the time of the accident was driving with the consent and knowledge of the owner does apply. *Lahey v Sharp*, 23 Mich App 556 (1970). See also *Detroit Automobile Inter-Insurance Exchange v Gordon*, 15 Mich App 41 (1968); *Houseman v Walt Neal, Inc*, 368 Mich 631 (1962). In *Lahey v Sharp, supra*, 558–559, quoting from *Hatter v Dodge Brothers*, 202 Mich 97, 102 (1918), the Supreme Court said:

"In the absence of such statutory qualification the

possession, use and control of an automobile in a public place fairly gives rise to the inference that the person so in control is the owner of such property or in lawful possession of it with the express or implied consent of the owner. By statute it is made a felony to take possession of and use a motor vehicle without authority (3 CL 1915, 15431; PA 1917, No. 220), and the presumption of innocence, in the absence of proof to the contrary, attends the driver. Unexplained and undisputed, the reasonable inference of consent by the owner and authority of the driver is such as common sense and common experience usually draws and applies to the possession of those driving automobiles along our highways. A *prima facie* case was made out by plaintiff's evidence, putting defendant to its proofs."

In the normal case of a presumption, the presumption itself cannot be weighed as evidence against other credible evidence introduced into the case. As a rule a presumption disappears when evidence is introduced from which facts may be ascertained. *Krisher v Duff,* 331 Mich 699 (1951). The Court in *Krisher v Duff, supra,* 705, said:

"It has been well settled in this state that the effect of a rebuttable presumption is to make out a *prima facie* case at the beginning of a trial. Having established the original *prima facie* case, the presumption then casts the burden of proof on the opposite party. Presumptions cannot be weighed against other credible evidence, for they have no value as evidence unless no other credible evidence whatsoever is introduced in regard to the presumed fact. As a rule they disappear if and when credible evidence is introduced from which the facts may be found."

However, in cases involving the liability of an auto owner under the civil liability act of owners and operators of motor vehicles, courts have made the presumption stronger due to the high degree of danger involved in the operation of a motor vehi-

cle and because defendants are usually the only persons who know the true facts regarding consent. As a result, in order to rebut either the statutory or common-law presumption against consent and knowledge, there must be "positive, unequivocal, strong and credible" evidence to the contrary. *Lahey v Sharp, supra; Krisher v Duff, supra; Houseman v Walt Neal, Inc, supra; Detroit Automobile Inter-Insurance Exchange v Gordon, supra.* For a more informative definition as to what constitutes "positive, unequivocal, strong and credible" evidence we again turn to *Krisher v Duff, supra,* 710, in which our Supreme Court said:

"What constitutes clear, positive and credible evidence? It has been held that uncontradicted evidence given by defendants alone is sufficiently clear, positive and credible to rebut the presumption and justify a directed verdict for the defendant. *Christiansen v Hilber, supra,*[2] *Brkal v Pletcher, supra.*[3] On the other hand, if any doubt has been cast on the testimony of the defendants or their witnesses, either by evidence in rebuttal or by question as to the witnesses' credibility, the evidence is not clear, positive and credible, and the issue of whether or not the presumption of consent has been overcome should be submitted to the jury. *Transcontinental Insurance Co v Berens, supra,*[4] *Karl v Gary, supra,*[5] *Cebulak v Lewis, supra.*[6] The result must necessarily vary as to the circumstances of each case.

"The above process is entirely a determination as to whether or not the defendants have met the burden of going forward with the evidence which is cast upon them by the statutory presumption. If the defendants fail to meet this burden and overcome the presumption, a verdict for the plaintiffs must follow. If the defend-

[2] 282 Mich 403 (1937).
[3] 311 Mich 258 (1945).
[4] 254 Mich 613 (1931).
[5] 255 Mich 621 (1931).
[6] 320 Mich 710 (1948).

ants do present clear, positive and credible evidence to overcome the presumption they have not prevailed on the issue of consent but have merely succeeded in casting the burden of proof as to consent on the plaintiff. It will be seen, therefore, that this process involves 2 separate determinations:

"1. Whether or not the presumption of consent has been overcome by clear, positive and credible proof;

"2. If it has been overcome, whether or not the plaintiffs can prove all the issues of the case, including consent, by a preponderance of the evidence."

Turning now to the instant case and relying on the aforementioned principles, we find that the plaintiffs had the benefit of the common-law presumption that the operator of the car, Smith, at the time of the accident was driving with the knowledge and consent of the owner, Crater. But if defendant Crater produced positive, unequivocal, strong and credible evidence, and uncontradicted, that the car was being driven by Smith at the time of the accident without the owner's knowledge and consent, then plaintiffs must prove by a preponderance of the evidence that the car was being driven by Smith with the owner's knowledge and consent. If the plaintiffs failed to meet that burden, the verdict against defendant Crater cannot stand.

To begin with, plaintiffs presented five witnesses, including plaintiff Terry Ensign, to offer testimony.[7] But at no time was anything brought out, or said concerning knowledge or consent. Plaintiffs then rested their case.

At this point, defendant Crater moved for a directed verdict which was denied.

Defendant Crater's case commenced with Robert Smith, the driver. He testified that he had not seen or talked to Mr. or Mrs. Crater the night of

[7] A medical deposition was also read into the record along with medical bills that were offered and received as evidence.

the accident, and that they had not invited him to their lake lot. He testified that the car full of youngsters stopped near the courthouse in Hillsdale so the boys could buy cigarettes. Further examination went as follows:

"*Q.* After you found out you couldn't find anything open, what did you do?
"*A.* Just got back into the car.
"*Q.* Where did you go in the car?
"*A.* I got underneath the wheel.
"*Q.* You got to drive it from here?
"*A.* Yes.
"*Q.* How did you get to drive it?
"*A.* I really couldn't say for sure. I wound up underneath the wheel.
"*Q.* Did Mr. Crater or Mrs. Crater or somebody tell you to drive?
"*A.* No.
"*Q.* Did any one tell you to drive?
"*A.* I couldn't say for sure either."

Plaintiffs' attorney then cross-examined Smith as to the activities of that evening, but nothing as to consent or knowledge.

Defendant next called Colleen Crater. She testified, in part, as follows:

"*Q.* Now, on that particular evening, why did you have the car?
"*A.* I had asked my mother if I could have the car to go to the fair.

\* \* \*

"*Q.* About what time would it be when you got to North Adams to bring these two boys home?
"*A.* It was around 5 or 10 minutes to 12.
"*Q.* Did you go in the house?
"*A.* No I didn't.
"*Q.* Why not?

"*A.* If I had went in the house I wouldn't be able to leave again.

"*Q.* Why?

"*A.* Because I had my orders—.

[At this point plaintiffs' attorney objected and the judge ruled:

"I will accept the question on what time she was to be home. I don't want her to repeat what her parents told her. They can testify."]

"*Q.* Colleen, what time were you supposed to be home that night?

"*A.* Twelve o'clock

\*　\*　\*

"*Q.* Were you able to get back home before 12?

"*A.* No, I wasn't.

"*Q.* Why weren't you able to get home before 12?

"*A.* Well, I had to take everybody home, so I wouldn't had time.

\*　\*　\*

"*A.* I told my little brother to tell my mother I had to take Loretta back to the lake and I would be back after a little while.

\*　\*　\*

"*Q.* Was your dad out there?

"*A.* No.

"*Q.* How about your mother?

"*A.* No.

"*Q.* Did they know that this party was going on?

"*A.* No."

Colleen further testified that Smith drove from the courthouse. On cross-examination she testified that her boyfriend, Gary Hawkins, drove down to Ohio, and from Hillsdale to North Adams. Nothing further was developed regarding knowledge and consent by Mr. Crater.

Mrs. Dacel Crater, the wife of defendant, was called next. She testified as follows:

"*Q.* * * * Where was the car that night? Who had possession or control of it?

"*A.* My daughter, Colleen.

"*Q.* How did she get this possession and control?

"*A.* Because I was sick that day and I sent her to pick up the children and take them to the fair and pick them up.

\* \* \*

"*Q.* Did you give her any instructions when she left?

"*A.* There is always a standing rule when you take the family car.

\* \* \*

"*Q.* What instruction did you give Colleen, your daughter, on this particular evening?

"*A.* To have the family car in by 12.

"*Q.* Did you give any instructions about leaving the state?

"*A.* No, I had no ideas she would do such a thing.

\* \* \*

"*Q.* Did you give any other instructions?

"*A.* No one was supposed to drive the family car, only our children at that time."

Cross-examination of Mrs. Crater proceeded as follows:

"*Q.* Mrs. Crater, it's true, is it not, that other than members of your family have driven that automobile?

"*A.* Not to my knowledge.

"*Q.* Is it not true that Gary has driven that automobile with your knowledge and consent and your permission?

"*A.* No, sir.

"*Q.* On no other occasions has Mr. Hawkins driven that automobile to your knowledge?

"*A.* Not to my knowledge.

"*Q.* Your testimony is that no one other than members of your family has driven that car with your permission?

"*A.* No, sir.

"*Q.* You say your daughter was to be in by midnight, is that right?

"*A.* Nothing unusual.

"*Q.* Well, what were your instructions to her? I thought you said she was to have the car in by 12 o'clock?

"*A.* That's just exactly what I meant

\* \* \*

"*Q.* But when the car wasn't parked in the drive at midnight, what did you do?

"*A.* I called the state troopers.

"*Q.* Oh, you did?

"*A.* Yes, I did.

"*Q.* When did you call them?

"*A.* After my boy came in and told me she took off.

\* \* \*

"*Q.* What time would you say you called them?

"*A.* Around 12:30 or 1 o'clock, after I had time to think things over.

"*Q.* What did you call them about?

"*A.* I asked them to pick up my car; gave them the license number and the make of it.

\* \* \*

"*Q.* You didn't tell them your car had been stolen, did you?

"*A.* She took it without my permission.

"*Q.* No, you didn't tell them your car was stolen, did you?

"*A.* I didn't tell them it was stolen. I told them she wasn't supposed to have it after midnight.

"*Q.* You called the state police and told them your daughter wasn't suppose to have the car past midnight and to pick it up?

"*A.* Yes.

"*Q.* Nothing further."

Defendant Bernard Crater was next called and he testified:

"*Q.* And this car, this 1967 Plymouth, who did that belong to?

"*A.* That belonged to me.

"*Q.* And would you tell me, please, what rules and regulations you have laid down so far as Colleen is concerned?

*[Plaintiffs' attorney objected to this line of questioning.]*

"*A.* You want to know the rule I had laid down?

"*Q.* Yes, for your car.

"*A.* The rule I had laid down for my car for all my children, not only Colleen. The car had to be in by midnight. Any time they were out past midnight, they were restricted to the place for a week of every 15 minutes they were late, and there was nobody supposed to drive my car other than my children.

\* \* \*

"*Q.* Bernard, did you know that Colleen was taking this car on this particular occasion?

"*A.* I did not know it.

"*Mr. Moes [defendant's attorney]:* I have no other questions, your Honor.

"*Mr. Kelly [plaintiffs' attorney]:* I have no questions, your Honor."

At this point both sides rested, and defendant Crater again made a motion for a directed verdict which was denied.

Upon our review of the aforementioned testimony, we find that the defendant thus introduced positive, unequivocal, strong and credible evidence that he had no knowledge of and gave no consent to the control of the automobile to Smith.[8] Since this matter was heard by the panel, the Supreme Court has decided the matter of *Roberts v Posey,* 386 Mich 656 (1972), *reversing* 26 Mich App 95

---

[8] See, *Roberts v Posey,* 26 Mich App 95 (1970), *leave to appeal granted,* 384 Mich 772 (1971); *Detroit Automobile Inter-Insurance Exchange v Swift,* 11 Mich App 166 (1968); *Fischer v McBride,* 296 Mich 671 (1941); *Christiansen v Hilber,* 282 Mich 403 (1937).

(1970). In that case the defendant allowed a third party to use his vehicle with instructions that the same was to be brought back no later than 11 or 11:30 a.m. as the defendant, a minister, had to go out on church business at that time. He was assured by the third party that the vehicle would be brought back within a very short time as it would be used to pick up a paycheck at his place of employment and returned immediately. It developed, however, that the car had not been returned by 3 a.m. of the following day at which time the defendant received a telephone call from such third party that he had had an accident with the defendant's car. The Court held that despite the fact that defendant took positive affirmative steps to locate the car, cause the third party to return same in order to terminate the permission to use the vehicle, he was still liable for the acts of such third party who had taken the car "with his * * * express or implied consent or knowledge" within the meaning of MCLA 257.401, MSA 9.2101. The Court, in effect, held that any steps to terminate the consent were ineffective and that such consent was a continuing one until the car was actually returned by the third party to the owner. This varies from the factual situation in this case in that the driver of the Crater automobile at no time was given permission by the owner to operate the vehicle. We cite *Roberts, supra,* to indicate that the newest case in the field of express or implied consent or knowledge was considered in arriving at a determination of this cause. We, however, feel that the principle of law enunciated in *Roberts, supra,* is not applicable since it is factually distinguishable from the case at bar.

The daughter was given strict orders that the car was to be home by midnight and that no one

else was to drive the car. It is clear that the defendant Crater never anticipated that the car would be used in such a manner and never consented to such a use. Of course, if the evidence presented by the defendant Crater would have been contradicted, unconvincing, or offset by evidence introduced by the plaintiffs, then the issue on knowledge and consent would have properly been for the jury's consideration.[9] However, the evidence was not contradicted, unconvincing, or rebutted in any form, and the testimony of Mr. and Mrs. Crater and their daughter Colleen was not impeached in any fashion by the plaintiffs. Furthermore, despite the members of the Crater family being interested parties to this action, the presumption of knowledge and consent could still properly be overcome on the basis of their testimony alone, if such was clear, positive and uncontradicted.[10] A thorough search of the record fails to disclose any instance of the plaintiffs producing or eliciting any testimony on knowledge or consent to the contrary of that presented by defendant Crater. Crater, then, met his burden, and the presumption of knowledge and consent should have disappeared from the case.

Since defendant Crater produced evidence sufficient to rebut the presumption, it then became the plaintiffs' burden to show by a preponderance of the evidence, that the car was being operated with the owner's express or implied consent or knowl-

---

[9] See *Lahey v Sharp,* 23 Mich App 556 (1970); *Muma v Brown,* 378 Mich 637 (1967); *Detroit Automobile Inter-Insurance Exchange v Gordon,* 15 Mich App 41 (1968); *Houseman v Walt Neal, Inc,* 368 Mich 631 (1962); *Detroit Automobile Inter-Insurance Exchange v Halsey,* 13 Mich App 253 (1968); *Monaghan v Pavsner,* 347 Mich 511 (1956); *Krisher v Duff,* 331 Mich 699 (1951); *Cebulak v Lewis,* 320 Mich 710 (1948).

[10] *Krisher v Duff, supra; Christiansen v Hilber, supra; Brkal v Pletcher,* 311 Mich 258 (1945).

edge at the time of the accident by Smith. The plaintiffs, however, failed to introduce any evidence at all, either during their case in chief, on cross-examination, or on rebuttal, that the car was being driven by Smith with the owner's knowledge and consent. Consequently, since plaintiffs failed to meet their burden, the trial judge should have granted defendant Crater's second motion for a directed verdict, or later, for a judgment notwithstanding the verdict.[11]

Accordingly, that refusal is reversed, and the matter remanded for entry of a judgment notwithstanding the verdict *(n.o.v.)* as to defendant Crater.

All concurred.

---

[11] *Ibid.*